# Commonwealth, Appellant, *v.* Cover.

*Election law—Violation of election law—Primary elections—Charge of court—Inadequacy of charge.*

1. On the trial of a joint indictment against an entire election board of a primary election, for violation of the election laws, it is reversible error for the trial judge to fail to instruct the jury properly as to the respective duties of clerks, inspectors and judges of elections, where such instructions are requested.

2. Where it is shown on the opening of the ballot box that in many instances the ballots were mutilated by erasures, and that in the vote for several candidates the ballots and tally-sheet failed to agree, the evidence is ample to sustain the conclusion that one or more of the election officers were guilty of violating the law.

*Election law—Officers—Identity of name—Prima facie evidence —Case for jury.*

3. Identity of name is prima facie evidence of identity of person.

4. If identity is denied, identification may be established by proper evidence.

5. On an indictment for violation of the election laws, where defendant pleads to the indictment and does not deny at the trial that he was the person mentioned in the indictment, the case of identity is for the jury and not for the court, where the Commonwealth proves that the ballot box and returns remained in the custody of the persons authorized to receive them, until they were delivered to the court, and produces in evidence party election sheets showing that one bearing the name of defendant had been returned as one of the party election officers.

6. If, in such case, defendant is not in fact the person mentioned in the indictment, he must show it by his own testimony or otherwise.

7. If a conviction is reversed on other grounds, the appellate court will direct a re-trial in order that the question of identity may be submitted to the jury.

Mr. Chief Justice MOSCHZISKER and Mr. Justice SCHAFFER dissented on the ground that defendant should be discharged for lack of evidence to prove guilt, and not subjected to a new trial.

Argued October 8, 1924. Appeal, No. 147, Oct. T., 1924, by Commonwealth, from judgment of Superior Court, No. 174, April T., 1924, reversing judgment of Q. S. Cambria Co., Dec. T., 1923, No. 45, on verdict of guilty, in case of Commonwealth v. Alexander Cover et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Judgment reversed and modified.

Appeal from Superior Court. See 83 Pa. Superior Ct. 402.

The opinion of the Supreme Court states the facts.

Judgment reversed and modified. Commonwealth appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*D. P. Weimer,* District Attorney, for appellant.

*Harry Doerr,* with him *Forest* and *Percy Allen Rose, Philip N. Shettig* and *W. A. McGuire,* for appellee.

OPINION BY MR. JUSTICE FRAZER, November 24, 1924:

Defendant, Alex. Cover, who acted as one of the clerks at a primary election held in the 16th Ward of the City of Johnstown, September 18, 1923, was jointly indicted with four other election officers, viz, the judge of elections, two inspectors, and one other clerk, on a charge of making a false return of the votes cast in the election district named. All five defendants were convicted. Motions for a new trial and in arrest of judgment were made, but subsequently withdrawn as to all except Cover. The motions were overruled as to him and defendants sentenced. Cover appealed to the Superior Court which reversed the conviction as to him, and ordered his discharge, assigning two reasons, first, because the trial judge failed to properly instruct the jury as to the respective duties imposed by law on election officers, and, second, because the Commonwealth failed to prove defendants were duly elected, qualified and acting officers of election or that they were in any way connected with the making of false returns. On petition of the district attorney of Cambria County, the Commonwealth was allowed an appeal from the judgment of the Superior Court to this court, and the only questions involved here are the adequacy of the court's charge respecting the duties of election officers, and whether the evidence was sufficient to sustain the indictment.

The trial judge instructed the jury it was their duty, first, to determine whether ballots were altered and

false returns made, and, if so, whether defendants, or any of them, wilfully caused this to be done. No instructions were given as to the respective duties of the several defendants until the close of the charge, at which time, in response to request of counsel, the court said further, "Counsel for the defense have asked us to call your attention to the different duties of judge of election, inspectors, etc., under the law. The law provides that none of these officers shall have a pencil in his possession during the count or reading of the ballots. You can take that into consideration in considering their respective duties. It was stated we believe, that Ed. M. Lysett was judge of election; John Quinn and John Pohl, inspectors; and Michael Havener and Alex. Cover, the clerks. You will take all that into consideration in arriving at the guilt or innocence of the defendants."

The foregoing instructions, it will be observed, do not contain a single word of information as to the duties imposed by law on the several election officers. The jury were thus without guide to aid them in deciding which, if any, of defendants were responsible for the irregularities found present in the returns. Their natural tendency would be, under the instruction given, to hold all equally liable as an election board, on the theory that their duties and obligations were identical, while, as a matter of fact, they are distinctly unlike, consequently a fraud may possibly have been committed by two or more of the members of the board without concurrence or knowledge of the others. The Act of July 9, 1919, P. L. 839, amending earlier primary election laws, provides, inter alia, that "the judge or one of the inspectors, in the presence of the other officers, shall read aloud the names marked or inserted upon the ballot, keeping the ballots of each party in sequence, together with the office for which the person named is a candidate, and any other relevant matter necessary to identify him, and the clerk shall carefully enter each vote as read, and

keep account of the same in triplicate tally papers for each party, to be provided as aforesaid."

The duty of handling the ballots is by the act just referred to imposed upon the judge and inspectors, while the clerks are required to keep the tally sheets. The latter are without means of knowing whether ballots are correctly read and called, nor would it be possible in all cases for the former to personally see that the clerks entered the proper tally. Consequently, in this case it was of the utmost importance that the jury should be informed and understand that the duties of defendants were not identical and in what respect they differed, as such information was of the greatest significance in passing on the guilt or innocence of the respective defendants. The charge was wholly inadequate for this purpose.

Was evidence produced sufficient to convict defendant of the offense charged in the indictment? It cannot be denied that flagrant irregularities existed in connection with the making and filing of the election returns from the district in question. The computation board was composed of Judges EVANS and MCCANN of the Court of Common Pleas of Cambria County, the county commissioners being disqualified because two of the members were candidates for reëlection. Judge EVANS was called as a witness at the trial, and testified the ballot box was brought into court sealed; that when opened it contained all papers required by law to be returned, but that, upon examination of the contents of the box, they observed the ballots in many instances were mutilated by erasures and that in the vote for several candidates the ballots and tally sheet failed to agree. This evidence was ample to sustain the conclusion that one or more of the election officers were guilty of the offense charged. The contention of defendant, however, and the conclusion of the Superior Court is that this situation was not proof that an election was held at which

defendant acted as one of the clerks, and, if so, there was nothing to connect him with the offense charged.

The indictment charged that defendant, on September 18, 1923, "being then and there the appointed, qualified and acting clerk of the election board of the Sixteenth Ward of the City of Johnstown, in said county, 'unlawfully and knowingly inserted and knowingly permitted to be inserted, certain false figures and other fraudulent entries in the tally paper, return sheet, statements, certificate, ballot and other records and documents authorized and required to be made, used, signed, returned and preserved for public purposes in connection with the primary election, then and there held.'" The Commonwealth proved the ballot box and returns remained in the custody of the persons authorized by law to receive and preserve them until delivered to the judges to be opened, and later offered in evidence the "triplicate return sheet of the Democratic party for an election held in the Sixteenth Ward of the City of Johnstown on the 18th day of September, 1923, in which Ed. M. Lysett is named as judge of election, John Quinn and John Pohl are named as inspectors, and Michael Havener and Alex. Cover are named as clerks." This offer was not objected to on the ground that it failed to identify defendant as the Alex. Cover whose signature appeared as clerk in the return sheet, but was based solely on the fact that the indictment did not refer to any primary election held, and further because the paper had not been identified. The return sheet was then identified by the witness as one of the primary election records turned over to Judge EVANS. In absence of denial that defendant was an election officer or of any question being raised as to the identity of defendant, the above evidence was ample to justify the conclusion that defendant was the person mentioned in the indictment and election returns. Identity of name is prima facie evidence of identity of person (Atchison v. McColloch, 5 Watts 13, 15; Clark v. Freeman, 25 Pa. 133; Hamsher v. Kline, 57 Pa. 397; Mc-

Coneghy v. Kirk, 68 Pa. 200; Lampeter Twp. Rd., 35 Pa. Superior Ct. 379) ; if identity is denied, identification may be established by proper evidence.   This reason applies with special force here, where defendant was actually in court with opportunity to raise the question, if he were not in fact the Alex. Cover mentioned in the indictment.   Under the circumstances, this court would not be justified in holding as matter of law that defendant's identity had not been established; the question accordingly would be for the jury.   As counsel did not see fit to raise the question at the trial, it was no doubt an after-thought.   In view of our disposition of the case, defendant will have ample opportunity to prove he was not, in fact, a member of the election board.

We conclude the judgment of the Superior Court reversing the judgment of the court of quarter sessions was proper because of the insufficiency of the charge to the jury on the question of the duties of defendant. On a retrial of the case, the jury should be instructed that if defendant faithfully performed the duties of his office as prescribed by the statute, and tallied the votes accurately as called by the judge or inspector, and did not participate in any fraud, he should be acquitted; the charge should further contain full instructions as to the duties of the respective election officers under the statutes.

Judgment modified and new trial ordered.


DISSENTING OPINION BY MR. CHIEF JUSTICE MOSCH-ZISKER, AND MR. JUSTICE SCHAFFER, November 24, 1924:

The offense charged in the indictment is that the accused "knowingly" inserted or caused to be inserted "false figures......in the tally paper" and "return sheet," not that he failed to discover possible frauds perpetrated by others.

In order to have the evidence against one, prosecuted for a criminal offense, presented to a jury, the proofs relied on must show, (1) that the offense alleged was in

fact perpetrated; and (2), when this is established, that the person indicted took part in its commission. When the evidence relied on by the Commonwealth fails to show these essential facts beyond a reasonable doubt, and the accused requests the trial court so to instruct the jury (as he did in the present instance), if the request is refused, defendant is entitled, on appeal, to be discharged from his recognizance: Pauli v. Com., 89 Pa. 432, 436; Com. v. Ruddle, 142 Pa. 144, 149; Com. v. Harris, 168 Pa. 619, 628; Com. v. Yost, 197 Pa. 171, 177; Com. v. Barrett, 28 Pa. Superior Ct. 112, 114, 116. In connection with the foregoing cases, we may state that a reversal without further order "ipso facto operates to discharge the accused": 12 Cyc. 944, sec. h.

Of course, a criminal charge may be sustained by circumstantial evidence, but such proofs must show guilt beyond a reasonable doubt. It is a principle of the criminal law that every fact essential to a conviction must be proved beyond a reasonable doubt, for, as said by Mr. Justice BROWN, in Com. v. Yost, 197 Pa. 171, 175, when a defendant is in a "criminal court," "nothing is to be presumed against him," meaning no fact material to the case of the Commonwealth. The rule on review is stated in·17 C. J. 223, thus: "The appellate court cannot presume the existence of essential facts not warranted by the evidence."

Here, while a judge who sat on the return board gave testimony to the effect that there were more votes tallied and returned for a certain candidate than were marked for him on the ballots, and that there were less votes tallied and returned for another candidate than marked for him on the ballots (evidence which was objected to and should have been excluded on the grounds that the writings themselves were the best and therefore the only proper proofs of the facts the Commonwealth was then seeking to establish), yet the prime factor relied on to convict defendant was the circumstance that certain ballots found in the box were apparently mutilated. There

is no proof whatever that defendant took any part in marking or changing the marks on these ballots. So far as the evidence goes, every one of them may have been badly marked and erasures made thereon by the voters themselves; but, however that may be, defendant was charged only as a clerk of the election board, and, under the law, such officers do not handle the ballots, they merely assist in tabulating them from the facts called out by other election officials. The record is entirely bare of proof that defendant committed, or took part in, any of the false or fraudulent acts charged, or that he was in fact present at the count of the votes or in any manner officiated therein or even that the name Alex. Cover signed to the papers, was in fact his signature, the only item of evidence offered to connect him with the offenses alleged being the fact that the election tally and return sheet have a name on them which is similar to his.

As well stated in the unanimous opinion of the Superior Court, reversing the judgment of the Quarter Sessions of Cambria County (83 Pa. Superior Ct. 402, 407-8): "The district attorney contented himself by merely offering proof of alleged irregularities, erasures, etc., appearing in the ballots when produced before the return board; there was not an iota of testimony in the case connecting [defendant] with the commission of the crime [alleged], or showing [he was] in a position to commit it......This appellant, by appearing in court and pleading [not guilty]......may have admitted that he was the Alex. Cover named in the indictment, but he did not thereby admit that he was one of the...... acting clerks of the election board......or waive proof of that essential fact......; it was a necessary averment of fact which, in order to secure conviction, had to be proved......and this the Commonwealth wholly failed to do. It is just as reasonable to ask for a conviction of larceny by proof that goods were stolen, without connecting the [particular] defendant [at bar] with the

theft, as to attempt to secure conviction for violating the election laws by evidence that, when the ballot box was opened, the ballots showed erasures, etc., but without proof as to who were the members of the election board . and in a position to alter the ballots......In the ordinary course of his duties as clerk, appellant was not required to handle any of the ballots which it is alleged bore unlawful erasures or insertions. If he went outside the line of the duties marked out for him by statute and participated in......unlawful conduct, some evidence in support of that fact should have been produced. ......Zeal in the prosecution of violators of our election laws is always to be commended, but it is best to exhibit it in the careful preparation of the case and in the production of the necessary proof; convictions may not be sustained even as to election cases without evidence supporting the material averments of the indictment."

The authorities cited in the majority opinion, to sustain the rule that "identity of name is prima facie evidence of identity of person," are on the civil side of the law where the rule as to proof beyond reasonable doubt does not prevail; as said by the Superior Court, the most that the facts of the case at bar proved was that defendant Cover was the same Cover named in the indictment, not that he acted as a clerk of the election or was present at or took part in the commission of any of the offenses charged by the indictment. Section 10 of the Act of May 23, 1887, P. L. 158, 161, expressly provides that "The neglect or refusal of any defendant actually upon trial in a criminal court to offer himself as a witness [shall not] be treated as creating any presumption against him," yet the majority opinion treats defendant's "absence of denial" that he was an active election officer as sufficient to create the presumption that he was in fact such an officer.

Since the evidence adduced was wholly insufficient to take the case to the jury, defendant was entitled to acquittal as a matter of law and, under well-established

rules of criminal jurisprudence, he cannot now properly be put to another trial for the purpose of affording the Commonwealth an opportunity of filling up the gaps in its proofs; on such a rule as that, one charged with a criminal offense might be obliged to stand trial innumerable times until his powers of resistance were exhausted. Such is not, and never has been, the law of Pennsylvania.

In this case, at the close of the evidence as presented, defendant was entitled to have his request for binding instructions affirmed, which, necessarily, would have led to his immediate discharge at our hands. "Common law rules prevented any action by appellate courts on reversal except to discharge the prisoner" (12 Cyc. 940, section c); now we can render such judgment as should have been given by the trial court, and in our opinion the accused ought to be discharged on appeal where the evidence in the trial court was insufficient to establish the offense (State v. Crawford, 98 S. E. (W. Va.) 615, 617; People v. Gaige, 23 Mich. 93, 95); this view accords not only with the best opinion elsewhere, but with the prior judgment of our court. In Com. v. Yost, 11 Pa. Superior Ct. 323, defendant was acquitted of the criminal charge of maintaining a nuisance by polluting the water of a stream used for domestic purposes; the Commonwealth appealed (the case being within the very limited class where the State has that right); the Superior Court, assuming many facts suggested as existent by the evidence, but (in the view of the Supreme Court) not proved, set aside the verdict, reversed the judgment, and "ordered that the case be again tried." On appeal, we said (197 Pa. 171, 176, 177) defendant was entitled to binding instructions because, being "in a criminal court," "nothing was to be presumed against him," and the facts essential to his conviction had not been proved; that the evidence being "insufficient to establish guilt ......as charged, it is the duty of the trial court on request to direct a verdict of not guilty," and that, "for the reasons stated," as "the defendant should have been

acquitted," the Superior Court erred in ordering a new trial; hence we reversed. Now, the majority, in effect, reverses the Superior Court for not doing the very same thing which we said in the Yost case it erred in doing, namely, ordering a new trial where the evidence in the original trial was insufficient to sustain a conviction. In addition, the record before us contains no indication that on another trial better evidence of guilt will be presented.

According to the law as we understand it, the Superior Court was right in ordering the discharge of defendant, and for this reason we are constrained to enter our dissent from the order of the majority, which modifies the judgment of the Superior Court and subjects appellant to a new trial.