Commonwealth *v.* Middleton, Appellant.

Argued October 3, 1938.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Robert N. C. Nix,* for appellant.

*John P. Boland,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY PARKER, J., March 3, 1939:

The defendant was found guilty on two bills of indictment, the one charging perjury and the other false registration in violation of "The First Class City Permanent Registration Act" of March 30, 1937, P. L. 115, §45 (b) and (d), respectively (25 PS §623-45). Sentence was imposed upon the false registration charge and suspended on the perjury charge, but defendant was directed to pay the costs in the latter case before April 30, 1938. The defendant has appealed in each case.

The only question raised which requires extensive discussion is whether the evidence produced was sufficient to sustain a finding that the defendant who was placed on trial was the *same* person who was shown to have applied for registration as a qualified voter in a particular election district when he knew that he was not lawfully entitled to be then and there registered and who was guilty of perjury in answering questions asked him by the registrar. It involves, incidentally, the probative effect of identity of name.

As the prime question involved is the sufficiency of the evidence to sustain the verdict, it is necessary to refer to the facts bearing on the subject of identity in some detail. A man presented himself, in Philadelphia on June 29, 1937, at a place prescribed by law for registration, as a qualified voter and subscribed a written oath wherein he declared that his name was Charles E. Middleton, resident at 2205 North 19th Street, second floor rear, 28th Ward, 9th District; occupation, interviewer; color, colored; sex, male; height, 5' 7"; born in Pennsylvania; in district seven months; in state all his life; color of eyes, brown; color of hair, black; date of birth, 1-6-89; and last registered from 2022 Montgomery Avenue. In addition, it was shown that the defendant who appeared was then and had been for

several years a resident of and owner of real estate in West Chester, Chester County, a county adjacent to the city of Philadelphia, and there was evidence from which the jury could infer that the defendant did not reside at the place given in the registration card.

The defendant appeared for trial and plead not guilty to the indictments in which Charles E. Middleton was named as defendant, from which we may infer that the jury had an opportunity to see the defendant and compare his appearance with the description given on the registration card that was offered in evidence. The defendant on trial was also identified as being a man who was at the prescribed polling place in Philadelphia on the day of the general election, November 2, 1937. The registrar who administered the oath to the man who applied for registration was unable to identify the defendant as the same individual, assigning as a reason for such inability that at that time they were registering from 800 to 1,200 people a day. The defendant was represented by counsel but did not take the stand nor offer any evidence.

The assistant district attorney takes the broad position that in prosecutions for a crime identity of name is prima facie evidence of identity of person, relying on *Com. v. Cover*, 281 Pa. 429, 126 A. 786; *Com. v. Joyce*, 319 Pa. 507, 181 A. 481; and *Com. v. Kazman*, 92 Pa. Superior Ct. 175. The defendants' counsel very earnestly deny that this is a principle of universal application and say that the authorities cited do not sustain it. The district attorney also contends that if his first proposition is not sound there was in any event sufficient additional evidence taken with the identity of name to sustain a finding by the jury of identity of person.

We do not interpret the Cover case as authority for the broad proposition that identity of name is in every criminal case prima facie evidence of identity of person. The Supreme Court in that case granted a new trial

on account of inadequate instructions to the jury as to the duties of the respective election officers and made reference to the fact that another question involved was whether "an election was held at which defendant acted as one of the clerks, and, if so, . . . . . . [whether there was anything] to connect him with the offense charged . . . . . . As counsel did not see fit to raise the question at the trial, it was no doubt an after-thought." (pp. 433, 435) In short, under the circumstances a new trial was granted and the defendant was not discharged. We will later consider the exact force of this case as we interpret it.

*Com. v. Joyce,* supra, was a quo warranto proceeding to test title to public office and the question presented was whether a person named in a birth certificate was the same person who was one of the contestants for the office. There was there, as here, other evidence of identity. In *Com. v. Kazman,* supra, we said (p. 178) : "There was evidence to show that the name of the defendant on the nomination petition at the preceding election and the name on the return sheet of the election in question were written by the same person. There was evidence therefore for the consideration of the jury on the question of identity." It is plain that in all three of these cases there was something more shown than mere identity of name.

Keeping strictly in mind that the true question involved here is not the bald question as to whether a case was made out by the mere proof of identity of name, but rather whether such identity of name, taken with the other evidence in the case on the subject, was sufficient to sustain the verdict, we will first give consideration to the weight to be assigned to that part of the proofs which concerns identity of name and then consider the evidence as a whole.

The defendant by his counsel raised the question now presented in the court below. Although the defendant stood mute, the Commonwealth had notice at the trial

that the identification was questioned. In civil cases the rule that "identity of name is prima facie evidence of identity of person" is *frequently* applied at least to the extent of requiring the party questioning the identification to go ahead or produce evidence to the contrary: *Atchison v. M'Culloch,* 5 Watts 13, 14; *Hamsher v. Kline,* 57 Pa. 397, 403; *McConeghy v. Kirk,* 68 Pa. 200, 203; *Lampeter Twp. Road,* 35 Pa. Superior Ct. 379, 380. Also, see *Eifert v. Lytle,* 172 Pa. 356, 365, 33 A. 573. As Dean Wigmore has stated (5 Wigmore on Evidence, §2529) : "The oddness of the name, the size of the district and length of the time within which the persons are shown to have coexisted, and other circumstances, affect this result differently in different cases......But these rulings cannot be said to attach a presumption to a definite and constant set of facts; they apply the presumption upon the circumstances of the particular case."

Chief Justice GIBSON in *Sailor v. Hertzogg,* 2 Pa. 182, 183, many years ago said: "Identity of name is ordinarily, but not always, prima facie evidence of personal identity." In that case, by reason of lapse of time, some additional evidence was required to make out a case sufficient to go to a jury. We are here dealing not with a civil case, but with convictions of crimes, and as stated by Dean Wigmore in the same section referred to above: "There was perhaps a greater traditional strictness shown in dealing with the identity of a person named ...... as the object of a conviction for crime."

In a criminal case the proofs relied upon must show beyond a reasonable doubt that the offense alleged was in fact committed and that the person indicted took part in its commission; the defendant is presumed to be innocent until the contrary is shown. The Act of May 23, 1887, P. L. 158 (19 PS §631) provides that "the neglect or refusal of any defendant, actually upon trial in a criminal court, to offer himself as a witness [shall not]

be treated as creating any presumption against him." It follows that in considering the weight to be given to identity of name the nature of the action in which the fact is involved must also be taken into account, and that stronger proof is required in a criminal action than in a civil case; the rule is applied with greater strictness.

The question we have been considering has frequently arisen in the criminal prosecution of one who has the same name as that of a defendant in a former prosecution, where it became material to show that the person sentenced in the former case was the same person who was then being charged with a crime. It has been stated that there is not unanimity in the opinions of appellate courts of the different jurisdictions as to the existence of a general rule applicable to criminal cases that "identity of name is prima facie evidence of identity of person." (See 85 A. L. R. 1104n, where the authorities are digested). There is not a well considered case to be found in the books that holds that rule to be of universal application in criminal cases or even in civil cases. *(Sailor v. Hertzogg,* supra). We cannot assent to the proposition that the rule is invariable. Assume for the sake of argument that the defendant in a criminal case was named John Smith and appeared for trial (see *State v. John Smith,* 129 Iowa 709, 106 N.W. 187, 4 L. R. A. [N. S.] 539) in Philadelphia and it became pertinent to prove that he was an habitual criminal, and the Commonwealth proved a record of a sentence for a serious crime in California fifteen or twenty years before in which one John Smith was named as defendant. It would be contrary to all reason to say that a prima facie case as to identity had been made out without further evidence on the subject. The common name and the elements of time and place involved, apparent on the face of the record introduced, would so diminish the probabilities that there was identity of person that the

fact could not be said to be proved beyond reasonable doubt or overcome a presumption of innocence.

An examination of the many cases dealing with the subject will demonstrate that almost without exception the so-called rule has, in fact, been applied or rejected depending upon the circumstances of the particular case and the nature of the action in which the question has arisen. This is true of our own cases. In *Com. v. Cover,* supra, a peculiar situation was presented in that the instructions to the jury were erroneous and with respect to identity there were circumstances in addition to identity of name that tended to show the person to be identical. In *Com. v. Kazman,* supra, there was the additional circumstance of identity of handwriting, and in *Com. v. Joyce,* supra, there was the additional fact that the maiden name of the mother was identical, as well as the fact that the date of a certificate of birth corresponded with the approximate age of the person involved. It is true that all courts have not exercised the same strictness in applying the rule. In short, this rule is rather a rule of the thumb than a precise statement of a general principle, and when the courts have said that identity of name is prima facie evidence of identity of person they have meant to say that in that particular case the circumstances warranted the application of such a rule. At best this is not a precise form of expression. Confusion disappears when we state the general rule to be that the circumstances of a particular case may be such that identity of name is prima facie evidence of identity of person.

In cases involving names on commercial paper the rule has been applied with considerable liberality, while in criminal cases consideration has been given to the substantive law of crimes and criminal procedure. Greater weight has been given to identity of name when the affirmative evidence of the party required to show identity of person has not been contradicted or the question raised on trial *(Com. v. Cover,* supra). Where

there has been no evidence given on behalf of the party later questioning the proof of identity of the person, there has been a decided tendency to give greater weight to identity of name. This has more force, however, in a civil than in a criminal case.

It is not necessary for us to decide in the present case what the effect of our criminal laws is on the academic question suggested, for there was here other evidence. Our problem is, as we stated at the outset, to decide whether the evidence as a whole, including identity of name, is sufficient to support the verdict of the jury. We are here dealing with a criminal case and the ultimate question of identity was for the jury, provided only that there was sufficient evidence to sustain such a finding. As bearing on the weight of proof of identity of name, the courts, including our own, have adopted the principle that where there is no contrary proof offered by the party concerned or by the defendant in a criminal cause, a comparatively small amount of proof in addition to identity of name constitutes sufficient evidence to submit to a jury to whose good judgment the decision is entrusted. The minimum required must necessarily depend on the facts of each case and the general law applicable to criminal causes.

Were the facts here shown sufficient to submit to a jury? To remedy a recognized evil the legislature passed registration laws and for cities of the first class prescribed just what facts should be recorded to the very end that identification might be made when the voter offered to cast his ballot. By section 20 of this registration act (25 PS §623-20) it was required that there should be recorded, inter alia, the voter's surname. Christian name, occupation, street and number of his residence, sex, color, height in feet and inches, the color of his eyes and hair, and the date of his birth. All the information required by the statute was set forth in the registration card received in evidence and the jury saw the defendant who plead to the indictment. The

jury could therefore make a comparison. They, we must assume, used the tests prescribed by act of assembly for the purpose of identification and were satisfied that the defendant answered the description.

Not only so, but the indicted defendant, who was then living with his family in West Chester, was around the polls in the 9th Election District of the 28th Ward of the city of Philadelphia on the day of the general election in November, 1937. The official record required to be kept and required to show the "date of each election and primary at which the elector votes" attested by the "initials of the election officer" (§20, subdivisions [c] [21] and [22]) shows that a Charles E. Middleton cast a ballot at the election held on November 2, 1937. True, there is no direct evidence that this defendant was the person who cast the ballot. But why was this very defendant at this particular polling place on election day in this large city, of all other polling places and other locations, when his home was in West Chester, twenty or more miles away?

The jury concluded from the direct and circumstantial evidence presented that the only reasonable inference was that the defendant and the man who registered were identical. The question was for them to decide and we cannot say that the evidence did not support the deduction that was so made, particularly when there was no circumstance suggesting a different conclusion.

We find no merit in the contention that the registration card should not have been received in evidence. Florence A. Taylor, one of the registrars appointed as such by authority of the registration statute, when called as a witness identified the card in question as one prepared by her and on which she had actually administered the oath to the applicant. This was better proof than if the head of the department had identified the card as an official document coming from a file under his supervision. She was more than a mere clerk for the statute provided for the appointment of what was,

in effect, a deputy registrar, and the registration data had been actually recorded by her. In addition, it was shown by another witness that the card was produced from the files of the registration commission. This was ample proof of the official document.

Judgment affirmed in each appeal, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part thereof, which had not been performed at the time the appeal in each case was made a supersedeas.