## Davis v. McGuigan et al.

*Albert G. Newton* and *Louis Lipschitz*, for plaintiff.
*Edward Davis*, for defendants.

MILLAR, J., May 8, 1939.—Plaintiff in his bill alleges that he is engaged in the business of manufacturing and selling candies at 922 Master Street, Philadelphia, Pa.; that he employes approximately 62 employes; that there is no strike or labor dispute at his factory and that all his employes are working. The bill then proceeds to allege that notwithstanding these facts defendant Candy Workers Union Local no. 350, and the individual defendants, who are officers or agents of the union, for the purpose of coercing plaintiff's employes into joining defendant union, did conspire and combine to unlawfully interfere with plaintiff's business; that they caused large numbers of persons to gather in the vicinity of plaintiff's business premises for the purpose of intimidating plaintiff and his customers; that they intimidated and interfered with plaintiff's employes; that they caused assaults to be committed upon plaintiff's employes and destroyed plaintiff's property; that they have damaged and broken plaintiff's motor vehicles and by force and violence prevented the use of same; that they have by threats and intimidation prevented drivers of motor vehicles from delivering and shipping plaintiff's products, all of which

was done for the purpose of compelling plaintiff's employes to join defendant union. It is further alleged that defendants have caused to be exhibited misleading signs and banners indicating that the plaintiff was unfair to organized labor and misrepresenting the nature of the dispute between plaintiff and defendants; that plaintiff has no adequate remedy at law and will suffer irreparable injury if these acts are permitted to continue. The bill then prays for an injunction to restrain defendants from committing the aforementioned acts and from interfering with plaintiff's employes or the management and operation of plaintiff's business.

No answer was filed by defendants.

At the hearing it was agreed by counsel for both plaintiff and defendants that we consider the hearing as a final hearing and the proceedings as an application for a permanent injunction.

From the pleadings and evidence the court makes the following

*Findings of fact*

1. Thomas M. Davis, plaintiff, is engaged in the business of manufacturing and selling fudge, with his place of business at 922-28 Master Street, Philadelphia, Pa.

2. The Candy Workers Union Local no. 350 is a labor organization of which defendant, Joseph McGuigan, is president; Carver Christiano is financial secretary; J. Newton Krause is business agent, and Harry or Harold Schwartz is an organizer of the said labor union.

3. Plaintiff employs in his said business approximately 62 employes.

4. Defendant union started organizing the employes of plaintiff in the early part of January 1939.

5. Plaintiff refused to sign an agreement with defendant union unless his employes first joined the union and recognized defendant union as their bargaining agent.

6. Defendant union's attempts to have plaintiff's employes join the union were unsuccessful, and on or about

January 13, 1939, defendant union commenced picketing plaintiff's place of business, the pickets carrying a sign "Davis Fudge Unfair to Organized Labor".

7. At first there were six or seven pickets in the vicinity of plaintiff's place of business, which later were cut down to two shortly prior to the hearing in this case.

8. At the time the bill was filed none of plaintiff's employes had left his employ. After the bill was filed Philip Corcoran, one of his engineers, who had belonged to the union for a year, was told "he had to come out" on strike. Another employe, Louis Williams, also an engineer, signed up with the union after the bill was filed. He also left plaintiff's employ. These two employes at the time of the hearing were the only pickets at plaintiff's place of business, and they carried banners with the word "strike" on it. The "unfair" banner was discarded.

9. There has been no cessation of work at plaintiff's plant, which has been in full operation throughout the time involved in these proceedings. No other employes of plaintiff have left his employ during this period as a result of the present controversy.

10. Plaintiff did not at any time coerce his employes or instruct them as to whether they should join defendant union or not. He gave defendants ample opportunity to interview his employes and persuade them to join the union, which the employes refused to do. He did, however, give his employes an increase in wages of 5 cents an hour in the early part of February 1939.

11. From the time of defendant's attempt to unionize plaintiff's plant, employes of the latter were accosted on their way to and from work. Two of plaintiff's employes were beaten by a group of men directed by defendant Harry Schwartz. One of the other employes was threatened and intimidated, and at least one of them was advised that if he did not join the union, his wife, who was a member of a union and working, would be fired.

12. During the time of the picketing defendants, through their agents or employes, have unlawfully, by

force and violence, injured, damaged and broken plaintiff's motor vehicles upon the streets of the city, and by threats, force and violence have attempted to prevent the use of the said vehicles, and did prevent the drivers from delivering and shipping plaintiff's products and materials.

13. At various times trucks which delivered merchandise for trans-shipment were obliged to reload the merchandise and take it back to plaintiff's place of business because of threats by defendant's representatives, who on at least one occasion even helped to reload the merchandise back on plaintiff's trucks.

14. At various times the drivers of plaintiff's trucks were threatened with having their trucks run "overboard" with the persons driving them if they did not cease making deliveries for plaintiff.

15. All of the aforesaid illegal acts of violence were done at the instigation of and under the supervision of defendant's organizer, Harry or Harold Schwartz, who was the authorized organizer for defendant union in charge of the unionization of plaintiff's plant, and through him the officers of defendant union and the union itself had knowledge of the acts of violence, threats, and intimidation.

16. Neither defendant union nor its officers did at any time repudiate the actions of their organizer, Harry or Harold Schwartz, as above related.

17. The public officers charged with the duty of protecting plaintiff's property from the aforesaid illegal acts were unable to afford sufficient protection to plaintiff's property and employes. They necessarily arrived after the event, having received notice of interference with plaintiff's trucks. The officer stationed at plaintiff's place of business was obviously incapable of preventing damage or injury or interference with plaintiff's trucks while on the streets of Philadelphia. The evidence also is clear that the public officers were unable to prevent assaults upon plaintiff's employes.

18. Plaintiff's business has suffered and will continue to suffer substantial and irreparable injury if the foregoing acts are continued.

19. As to each item of relief granted, greater injury will be inflicted upon plaintiff by the denial of relief than will be inflicted upon defendants by granting relief.

20. No item of relief granted is relief which is prohibited under section 6 of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198.

### Discussion

The present controversy arises out of the attempt of defendant Candy Workers Union Local no. 350 to unionize plaintiff's plant. It, therefore, involves or grows out of a "labor dispute" within the meaning of the Labor Anti-Injunction Act, supra. The reasons for our conclusion will be found in our opinion in the recent case of Peak v. McElroy et al., 33 D. & C. 556, which also grew out of an attempt by defendant in that case to unionize Peak's employes.

In view of the provisions in sections 6 and 7 of the Labor Anti-Injunction Act, picketing in a labor dispute cannot be restrained though it is accompanied by illegal acts. Only the illegal acts may be enjoined.

When plaintiff was first approached by defendant union, he was requested to sign a contract with the union. This he refused to do and told the union representative that first his employes must be organized, and if the latter joined the union he would not object. Plaintiff was willing to deal with defendant union if his employes should recognize it as their bargaining agent. That has remained his attitude throughout.

Therefore, the use of the word "unfair" on banners carried by pickets in this case should be restrained. "Unfair" means "Marked by dishonesty or fraud; showing partiality or prejudice; not fair; dishonest; unjust; as, *unfair* dealing; an *unfair* trader": Funk & Wagnalls New Standard Dictionary. The facts do not justify the

imputation of dishonesty, fraud, or unfair dealing to plaintiff. He was under no legal or moral obligation to sign up with defendant union. It was not the authorized bargaining agent of his employes. He indicated his willingness to deal with the union if his employes selected it as their bargaining agent. They refused to do so probably because, as the testimony indicates, they were receiving higher wages than the scale in force in other plants where this particular union was the bargaining agent. To term plaintiff "unfair" to organized labor under these circumstances is not a truthful statement of the facts. While some courts have indicated the term "unfair" as used in a labor dispute has acquired the well-understood and limited meaning of being "unfriendly to organized labor", the facts in this case do not warrant even that mild accusation: Steffes v. Motion Picture Machine Operators Union, etc., et al., 136 Minn. 200; J. F. Parkinson Co. v. Building Trades Council, etc., et al., 154 Cal. 581; Seattle Brewing & Malting Co. v. Hansen et al., 144 Fed. 1011.

Shortly after this bill was filed two of plaintiff's employes, Philip Corcoran and Louis Williams, left plaintiff's employ and joined the picket line. Thereafter they displayed banners with the word "strike". Corcoran had belonged to the union for a year. He was told "he had to come out", meaning he had to go out on strike. Williams had joined the union shortly before the hearing in this case.

In labor organization efforts if only an "unfair" sign is used, other union members such as teamsters are not obliged to coöperate by refusing to deliver or haul away merchandise from the picketed plant. But when a "strike" sign is used, such coöperation is obligatory.

A strike has been defined as "a simultaneous cessation of work, by workmen acting in combination to compel their common employer to accede to demands made on him by such combination": 12 C. J. 569, §54. In common parlance a "strike" also connotes some interference of

operation of employer's plant. Plaintiff's plant at all times was in full operation. It was not interfered with by the cessation of work by the two engineers. Furthermore, stating to the public that there is a "strike" at plaintiff's plant conveys the impression that at least a substantial number of plaintiff's employes have left his employ because of grievances he failed to correct, which is not the case here. The dispute is not between plaintiff and his employes. The simple fact is that both plaintiff and his employes have refused to recognize defendant as the bargaining agent of plaintiff's employes. At least one of the engineers was advised by the union that he had to go out on strike, presumably for the purpose of enabling defendant union to place a strike sign on the picket line, and thus make more effective the coercion of plaintiff to sign up with the union. While the Labor Anti-Injunction Act of 1937 grants to a union the free exercise of the right to advertise its grievances, it must be held to a high degree of fidelity in so doing. We conclude that the use of the word "strike" under the circumstances of this case is not an accurate statement of the dispute between defendant union and plaintiff, and is calculated and intended to mislead the public, and should be restrained.

Prior to the Labor Anti-Injunction Act of 1937, acts of violence, threats, intimidation, or coercion were unlawful and could be restrained: Kirmse et al. v. Adler et al., 311 Pa. 78. This act did not change the law in this respect. It preserves the unrestricted right of publicity to the union by any method "not involving misrepresentation, fraud, duress, violence, breach of the peace or threat thereof": Section 6(e) of Labor Anti-Injunction Act. Section 8 of the act also recognizes the right to restrain unlawful acts. The interference with plaintiff's trucks, assaults on employes, threats, and overt acts of violence will be restrained.

Harry Schwartz, also referred to in the testimony as Harold Schwartz, is admittedly an organizer of defend-

ant union in charge of the unionization of plaintiff's plant. It was he who first approached plaintiff in January of 1939, requesting him to sign with defendant union, and thereafter both the president, Mr. McGuigan, and the business representative, Mr. Krause, came to see plaintiff. Again it was Schwartz who was identified by plaintiff as being in the "gang" that stopped his trucks which he had to ship his merchandise. Again Schwartz was one of the persons who participated in the assault on John Moore and Mike Zola at Ninth and Jefferson Streets, Schwartz leaning against a wall and giving orders to the other men in these words: "Let them have it", after which these workmen were assaulted. Schwartz was also one of the men who came to the home of the employe, John Moore, and threatened to have the latter's wife fired from her place of employment unless he, Moore, joined the union. Schwartz was identified as the person who accosted Mr. Way, one of the contract haulers for plaintiff, at Twenty-third and South Streets, and demanded that he put his truck in the garage, implying that he could not haul for plaintiff. Shortly after this incident it was again Schwartz who told the same witness, Mr. Way, that if he left the factory of plaintiff with merchandise he, Schwartz, was going to take the truck and run it overboard.

It must be remembered that Schwartz is admittedly the organizer of defendant union employed by them for the very purpose of organizing plaintiff's plant. The officers of defendant denied responsibility for Schwartz's acts; that they knew about them seems a justifiable inference from the testimony. At no time did they repudiate his acts or take any steps either to prevent them or to terminate his employment with defendant union. The conclusion is inescapable that the acts of Schwartz and the men acting under his instructions were not only authorized by the union, but ratified and confirmed by them after knowledge thereof. A union, like any other individual or group of persons, cannot stand by and ac-

cept the benefits of acts which they claim to be unauthorized and then disclaim responsibility for them.

Defendants, however, raise a question as to the identity of the Schwartz mentioned in the testimony with defendant in this action. Though his name was mentioned throughout the testimony, defendants did not produce Schwartz at the trial, nor did they offer any testimony to show that the Schwartz mentioned at the trial was not one of the defendants named in this section. Whatever may be the rule in criminal cases, "In civil cases the rule that 'identity of name is prima facie evidence of identity of person' is *frequently* applied at least to the extent of requiring the party questioning the identification to go ahead or produce evidence to the contrary": Commonwealth v. Middleton, 134 Pa. Superior Ct. 573, 578, opinion by Parker, J., filed March 3, 1939, and cases therein cited. The burden was therefore on defendant to produce some evidence to show that the Schwartz mentioned in the testimony was not the defendant Schwartz in this action who was the organizer of defendant union. Having failed to do so, the identity of the two is a fair implication from the identity of name and the testimony of plaintiff's witnesses.

The court, therefore, makes the following

## Conclusions of law

1. This case involves a labor dispute as defined by the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, and said act applies to this case.

2. The use of the legends or signs "Davis Fudge is Unfair to Organized Labor" and "strike" are not truthful statements of the controversy involved in this case, and will be restrained.

3. No more than two pickets shall be allowed to patrol in front of plaintiff's premises or in the vicinity thereof.

4. Defendants will be restrained from threatening, intimidating, or committing acts of violence against plaintiff's employes, truck drivers, or in any other wise inter-

fering with the operation of plaintiff's place of business by either threats, intimidation, or acts of violence.

## Decree nisi

And now, to wit, May 8, 1939, the court enters the following decree nisi:

1. Defendants, their servants, agents, and employes are hereby restrained from employing or using more than two pickets in front of plaintiff's place of business at 922-28 Master Street, Philadelphia, Pa., or in the vicinity thereof.

2. Defendants, their servants, agents, and employes are hereby restrained from intimidating or accosting employes or other persons seeking access to or egress from plaintiff's said place of business.

3. Defendants, their servants, agents and employes are hereby restrained from displaying signs or banners stating that plaintiff is unfair to organized labor or unfair to defendant union, or bearing the word "strike", or from in any other manner whatsoever publishing or representing that there is a strike at plaintiff's place of business.

4. Defendants, their servants, agents, and employes are also restrained from following trucks coming to or leaving plaintiff's place of business; from damaging the same; from coercing, intimidating, or threatening the drivers of such trucks, or in any other way interfering with their operation.

5. Plaintiff and his agents and employes are enjoined from any and all acts or threats of violence, intimidation, coercion, molestation, libel or slander against defendant union engaged in the present labor dispute.

The prothonotary will notify the parties or their counsel of the filing of this adjudication and decree nisi, and unless exceptions thereto are filed within 10 days from the date hereof, the decree nisi shall be taken as and for the final decree in the cause.