SEATTLE BREWING & MALTING CO. v. HANSEN et al.

(Circuit Court, N. D. California. December 2, 1905.)

1. CONSPIRACY—BOYCOTTS—UNION LABOR—INJURY TO BUSINESS.

Where, pending a labor controversy between complainant and its employés, defendants as members of unincorporated labor organizations published notices, viz.: "Organized Labor and Friends: Don't drink scab beer!"—and then naming certain different kinds of beer and alleg-

ing the same to be "unfair," together with other signs directing organ-ized labor and friends not to use "this beer," and advising that they should guard their health by refusing to drink "unfair beer," which was alleged to include beer manufactured by complainants, such notices amounted to a boycott which complainants were entitled to enjoin.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Conspiracy, §§ 7–10; vol. 27, Cent. Dig. Injunction, § 174.]

2. INJUNCTION—VIOLATION—NOTICE.

A party, knowing of an injunction, who violates it, is liable to punishment for contempt, whether there was any legal service of the injunction on him or not.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§ 445–447.]

3. TRADE UNIONS—ACTIONS—PARTIES.

In a suit to restrain an alleged boycott against complainants' beer by voluntary labor associations, members of such associations were properly sued in their individual capacity.

4. COURTS—FEDERAL COURTS—JURISDICTION—CITIZENSHIP.

In a suit to restrain a boycott instituted by certain labor associations which were not corporations, such associations were properly designated as parties for the purpose of locating the citizenship of their members, also made defendants, in order to determine the requisite diversity of citizenship to establish federal jurisdiction.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 861. Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

Milton S. Eisner, Bush Finnell, and W. H. Orrick, for complainant. Emil Liess and Cameron H. King, for defendants.

BEATTY, District Judge (orally). I have examined the affidavits, as well as the authorities, submitted by counsel in this case, and am prepared to announce my conclusion. I believe it is the general practice in this court to reduce such conclusions to writing and file the same for the benefit of those interested. This, however, is a practice in which I indulge but little, and in this case I have nothing prepared not even notes. What I have to say will be orally stated and in such order as occurs to me as I proceed.

In this case, as in most cases of the kind, I find that the defendants, by affidavits and otherwise, deny most of the charges that are made against them. Among those so denied is the allegation that the drivers or employés of Rapp & Sons quit their employment through fear and threatened violence instigated by the defendants. By their denials I think they have met this charge. They show that these employés quit without compulsion and of their own volition. That they all quit at once is at least suggestive that some unusual influence was brought to bear upon them, but it may have been along by agreement among themselves and without any influence exercised by any commanding authority.

Of other specific acts charged against them, they deny the matters involved in the newspaper publications referred to. One was by complainant, stating its grievances, and the other the reply of the defendants thereto. If the complainant has the right, as it undoubtedly has, to set forth its views and the reasons of the dispute between the parties, there

is no reason why the defendant should not have a like privilege of replying thereto. Certainly, in replying, their statements should not be such as reflect upon and tend to injure the complainant's business, unless the truth shall so operate. I think there is nothing in these publications meriting further notice, and they are passed.

Aside from those matters and the special acts which have been denied by the defendants, I think the whole record and some of the admissions made by defendants show that the contest between these parties is over a question of wages and the character of employment. It is one of the objects of the union laborers to have none but their own people engage in these different employments, which is one of the contests here. They desire that the complainant shall employ only union men, while the complainant desires to enforce what is termed the "open shop." That contest is clearly outlined by the record, and not only does it appear that such is the contention of the defendants, but that this originated in a distant part of the continent, at Cincinnati, where the first orders or promulgations were made against the complainant. It is unnecessary to review the testimony upon this subject, and, without it, such is stated as the ground of contest between these parties. Unquestionably the complainant has the right to say who its laborers shall be and how it shall employ them. It has the right to manage its own business. It cannot compel the defendants to work for it according to its terms; but it has a right to say how its business shall be operated. On the contrary, the defendants have a right to say whether they will accept those terms or not. If they can procure terms of their own that are better for them and can do it in a peaceful way, they have that right. There is no question about that.

There is a statement by one of the affiants in his affidavit on this point—I imagine suggested by counsel—that it is the desire of the defendants to better their condition, and that is what they are aiming to do. He devotes a page or two to that and moralizing on the downtrodden condition of the laboring people and the oppression of the employers, all of which I think is out of place. I do not think that the laborers are downtrodden, nor do I think that the employers aim to be oppressive, but it is a contest between them; each one doing what he can for his own benefit. It must be conceded by everybody that it is commendable in laboring people to endeavor to better their condition, both morally, physically, and financially, and obtain the best prices they can for their labor and upon the most convenient terms for themselves. That is conceded by everybody. But in doing that they too often, I think, forget one thing. They forget that they must attain their objects by legal and proper means. They must not undertake to accomplish what they desire to the injury or at the expense of other people, and there is where the mistake is too often made. It is conceded by all that they have the right to better their condition, but they must not do it in a way to be oppressive of others. I think that is what they have attempted to do in this case. Perhaps they have not so intended, but the question is as to the result of their acts. Beyond any question, what they are trying to do would be oppressive of the business of these complainants.

Aside from these special charges of acts that they have done, there are things I think that are not disputed. They have circulated these different exhibits, or notices, which are made exhibits in this case. Here is one, which calls attention to the fact that certain parties, saloonkeepers, are using or selling or handling this "Rainier" beer. That is not anything apparently oppressive at first sight. It is simply calling attention to the fact that these parties are using this beer; but what is the design of it, and what is the result of it? Why, it is to intimidate these people or prevent them from dealing in complainant's beer. That far it is oppressive of the business of complainant and tends to destroy its business. There is no question about that, in so far as it would intimidate these people. It must be remembered that there are many timid people in this world, who would be much influenced by danger of even small losses. I have no doubt that many of these men who have this notice would fear that by continuing to engage in the selling of the beer there would be some loss to them, and that far it would hurt their business. Here is another one: "Organized Labor and Friends: Don't drink scab beer!" Then it names certain different kinds of beer and says they are "unfair."

The mere use of the word "uunfair" has a very distinct meaning in these days; and when a notice like this is put out it is almost in the nature of a command. Of course, it does not say to the laboring people, "You shall not drink" such beer, but it says: "To Organized Labor and Friends: Don't use this beer!" These organizations, in the way they are trained, for they are as well trained as any military force, understand these rules and know what they mean. The very use of that term "unfair" has a distinct meaning to them, and it is in the nature of a direction to the members of these organizations not to use that beer, and it is also an intimidation to those who are dealing in it. It gives them to understand that that beer will be boycotted; that it is unfair and will be boycotted. That would deter parties from using it or dealing in it. There are a number of that kind. Here is another one: "Guard Your Health by Refusing to Drink Unfair Beer!" Then it proceeds to name the beer that is unfair, and it includes among others the beer of the complainant. All those things are what would be termed now under the law "a boycott." I need not go into the definition of that. We generally understand what it means. But those things tend to unfairly obstruct the business of the complainant, and in that far these defendants are wrong, and it is the duty of the court to restrain them from doing anything that will interfere with the complainant's business.

Among the questions raised in this case is as to the form and extent of the restraining order, and its effect. One of the first matters in which I had anything to do with cases of this kind was some 12 years ago in what was known as the Cœur d'Alene strike. All these questions were brought up there and were passed upon. Thus far they have never been overthrown, I believe, and I shall follow the same rule that I did there. In that case the unions were made parties defendant and the members of the unions, of course, were included, and as far as possible their names were given. The injunction in that case

went against the organizations and all of their members, and without service of summons upon all of them. That ruling has never been changed, and I find by examining the records here that that has been the practice in this court. I feel, therefore, fully justified in following that practice. If it is wrong, it is for some other court to settle it; but for some reason these cases have never gotten up to any court which has changed that practice, and that stands as the rule today. It is also well settled that any party, knowing of an injunction, who violates it, is liable, whether he has any legal service upon him or not.

I think the naming of these parties as associations, not as corporations, serves the purpose of identification. These defendants are identified as members of these associations, and the individual defendants being alleged to be citizens of this state puts the case within the jurisdiction of this court. Laying aside for the present the consideration of the question whether these alleged associations are incorporated or not, such designation serves the purpose of locating these defendants and their citizenship as citizens of this state; thus creating the diversity of citizenship which is necessary to give this court jurisdiction. Nor do I think, after reflecting over the matter, that these parties who have not been served, who are alleged to be members of this association, can be dismissed from this case. I was asked the other day to dismiss them, and I declined to do so. I do not think they should be dismissed; but I think they are bound by the proceedings had here.

As to the form of the order, gentlemen, I have examined, in addition to the decision of Judge Morrow, in the recent case of D. E. Loewe and Others v. California State Federation of Labor (C. C.) 139 Fed. 71, the writ of injunction issued in that case. I think it is as full as the preliminary restraining order issued in this case, and I think that is a precedent which may be followed here.

My conclusion, therefore, is that this restraining order shall be continued as a temporary injunction, pending the action, and that the form of it may be substantially as has already been issued in a temporary restraining order; but I point you to the writ of injunction in the case referred to in the case of D. E. Loewe et al. v. California State Federation of Labor. I notice, too, that that writ, while directed to these organizations and then to different individuals named as members of the organization, also includes their attorneys, agents, employés, and all persons acting in aid of or in conjunction with them or any of them. That is as strong and takes as wide a latitude as have the writs and papers in this case. I feel justified in following the practice as established by this court, and, as I say, as I did a number of years ago in the case referred to in Northern Idaho, and so long as that practice is not overthrown by courts having the authority to do so, I do not see any reason why it should not be followed. I therefore commend to you, in preparing the form of the writ, to consult the one to which I have referred. I think it is substantially about what you have already prepared in the present case.