## Peak v. McElroy et al.

*Victor Frey*, for plaintiff.
*M. Herbert Syme*, for respondents.

MILLAR, J., February 26, 1938.—Plaintiff, in his bill in equity, alleges that he operates a restaurant and cafe in the name of Peak's Cafe at 18 and 20 North Eleventh Street, Philadelphia; that he employs approximately 35 men as bartenders, waiters, and cooks and in other capaci-

ties; that many of these have been in his employ as long as 20 years; that his employes are satisfied and contented with their wages and the conditions under which they work; that none of them is a member of defendant union and that none desires to become a member of that union; that no labor dispute exists between plaintiff and his employes or between plaintiff and any other person, and that there is no strike at his place of business. The bill then proceeds to allege that, notwithstanding these facts, defendant, Bartenders' Union Local No. 115, and James McElroy, an officer of the said union, have placed pickets in front and around plaintiff's business premises; that these pickets carry banners with the legend "Peak's Cafe Unfair"; that defendants caused large numbers of persons to gather in the vicinity of plaintiff's business premises for the purpose of terrifying the complainant and his customers; that customers desiring to patronize plaintiff's café were accosted by members of defendant union and were insulted and intimidated; that defendants by their acts are attempting to coerce plaintiff to force his employes to join defendant union, although his employes refuse to do so; that complainant will suffer irreparable injury if these acts are permitted to continue. Plaintiff then prays for a preliminary and permanent injunction to restrain defendants from picketing the premises of plaintiff and to cease and desist from interfering in any way with plaintiff's business.

At the hearing it was agreed by counsel for plaintiff and defendants that we consider the hearing as a final hearing and the proceedings as an application for a permanent injunction.

From the pleadings and evidence the court makes the following

### Findings of fact

1. Plaintiff, Thomas Peak, conducts a café and restaurant at premises 18 and 20 North Eleventh Street, Philadelphia, Pa.

2. Plaintiff has a personnel of 34 in his business, composed of bartenders, waiters, cooks, and others in various capacities, some of whom have been in his employ as long as 20 years.

3. None of plaintiff's employes is a member of defendant union, Bartenders' Union Local No. 115, but some were members of defendant union some 20 years ago. They either withdrew from the said union or were fined and expelled.

4. Harry Ames is secretary-treasurer of defendant union and James L. McElroy is president and business manager.

5. Defendant Bartenders' League No. 115 is not concerned in the picketing or other acts complained of in this case. It is a sort of club, composed of members of Bartenders' Union Local No. 115 and has the same officers as the union.

6. In March of 1934 the employes of the plaintiff formed an association known as Peak's Employes Association. An executive committee appointed by this association had the duty and power to take up grievances of employes with plaintiff. This association does not bargain collectively with plaintiff with reference to wages or terms and conditions of employment, these matters being arranged individually by each employe with plaintiff.

7. The Peak's Employes Association was formed by the employes themselves and plaintiff was not in any way interested in its formation. He neither coerced nor advised nor took any part in its organization.

8. The association's executive committee has in the past taken up various grievances with plaintiff, which have always been adjusted.

9. James L. McElroy, president, and Harry Ames, secretary-treasurer of defendant union, about six months prior to the time this bill was filed, approached plaintiff for the purpose of having his employes join defendant union. Plaintiff advised that whatever his employes chose to do he would abide by; that he would not influence

the men to sign up; that if his men wanted to join the union he would not stand in the way, but he would not advise them to do so or not to do so.

10. Harry Ames, secretary-treasurer of defendant union, at various times approached the employes of plaintiff with the view to having them join the union. The matter was submitted to the employes, members of the Peak's Employes Association. As a result it was decided that a vote should be taken, which meeting and vote was held either in September or October of 1937. The ballot was secret. There were 18 votes in favor of Peak's Employes Association, four votes in favor of the Congress of Industrial Organizations, and no votes in favor of defendant union.

11. Plaintiff has not exerted coercion upon his employes in the vote taken by them upon the question as to whether they desire to be represented by defendant union for the purpose of collective bargaining with plaintiff.

12. On Thursday, January 6, 1938, defendant union commenced picketing at the place of business of plaintiff. The number of pickets varied from five to two.

13. On the evening of the same day, January 6, 1938, about forty men, former or present bartenders of other establishments, congested the pavement in front of plaintiff's place of business, and a man in the street delivered a speech to them.

14. At various times customers were accosted as they attempted to enter plaintiff's restaurant. Several customers were told not to go in that place; not to go in that dump, and one was punched in the stomach twice by a person who was not a picket at the time, but had been carrying a banner prior to the incident. Two men tried to keep a customer from entering the place, struggled with him until an officer came along, and then desisted. An attempt was made by the pickets to stop deliveries of bread and beer to plaintiff, but these were ineffective.

15. The banners carried by the pickets placed by defendant union in front of plaintiff's place of business

contained the legend, "Peak's Unfair, A. F. L." and "Peak's Cafe, Unfair, A. F. L."

16. There is no strike in plaintiff's establishment or among plaintiff's employes.

17. Defendant union proposes to and will continue picketing the place of business of plaintiff.

18. The acts herein recited have been committed by agents and members of defendant union and will be continued unless restrained.

19. As a result of these acts plaintiff's business has suffered, and substantial and irreparable injury to plaintiff's business will follow if these acts are continued.

20. The public officers charged with the duty to protect plaintiff's property are unable to furnish adequate protection against the acts herein recited.

### Discussion

In Kirmse et al. v. Adler et al., 311 Pa. 78, the Supreme Court, in an opinion by Chief Justice Kephart, laid down the principles that should govern the courts in this State in granting injunctions in "labor disputes" as follows:

1. To impress the strong arm of an equitable injunction in a labor dispute there must be present evidence showing either disorder, coercion, intimidation, violence, boycott, or threats or acts looking to the same end.

2. Picketing, if peaceful, is lawful. But if it is accompanied by disorder, coercion, intimidation, violence, boycott, or threats or acts looking to the same end, the picketing ceases to be lawful and will be restrained.

Since the decision in Kirmse et al. v. Adler et al., supra, our legislature passed the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198. A history of the development of the law relating to labor injunctions, culminating in the passage of similar legislation applicable to the Federal courts and by various States, is to be found in The Labor Injunction by Frankfurter and Green (1930), the Act of March 23, 1932, 47 Stat. at L. 70, 29 U. S. C. §109, American Furniture Co. v. I. B. of T. C. & H. of A.,

Chauffeurs, Teamsters, etc., et al., 222 Wis. 338, 268 N. W. 250, and George B. Wallace Co. et al. v. International Association of Mechanics, etc., et al., 155 Ore. 652 (1937). It would unduly lengthen this discussion to review it here.

The case at bar involves a labor dispute as defined by the Labor Anti-Injunction Act, supra. Section 3 of the act provides that:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation . . . or who are members of the same . . . organization of . . . employes, whether such dispute is — (1) between one or more employers . . . and one or more . . . associations of employes. . . .

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer".

Defendant union's obvious purpose is to become the sole collective bargaining agent for plaintiff's employes. That is the function and business of a labor union. If plaintiff's employes joined the union they would naturally designate defendant as their bargaining agent, and the same result would be obtained if plaintiff signed a contract with defendant recognizing it as the bargaining agent for his employes. Membership in defendant union or its affiliates would then become a condition of employment. Whichever method of approach is used in an attempt to unionize a business or plant, the ultimate object is collective bargaining by the union concerning wages, terms, and conditions of employment.

Thus the controversy between plaintiff and defendant concerns "The . . . representation of persons in negotiating . . . terms or conditions of employment", and is a "labor dispute" as defined in section 3 (c) of the Labor Anti-Injunction Act. The parties to this case are involved in a "Labor dispute" because the dispute is between an employer and an association of employes, who are members of the same organization, and the members of defendant union are "engaged in a single industry, trade, craft or occupation". It is immaterial that none of of the employes comprising the defendant union is employed by plaintiff because section 3 (c) of the act provides that the disputants need not "stand in the proximate relation of employer and employe".

The definition of a "labor dispute" and of the parties to such a dispute as contained in section 3 of the Labor Anti-Injunction Act is extremely broad. From the language used, it is impossible to escape the conclusion that this case involves a "labor dispute" as defined by the act, even though there is no dispute between plaintiff and his employes, and no members of defendant union are employed by the employer in question, and the only dispute relates to the unionization of plaintiff's business or plant.

The history of this definition makes this conclusion even clearer. In 1914 the Anti-Trust Act of October 15, 1914, 38 Stat. at L. 730, 29 U. S. C. §52, was passed by Congress granting certain immunities from injunctions in labor controversies in our Federal courts. In Duplex Printing Press Co. v. Deering et al., etc., 254 U. S. 443, the United States Supreme Court construed section 20 of this act as granting immunity from injunctions in labor controversies only when the dispute existed between an employer and his own employes. A union in one craft in trying to achieve the unionization of nonunion plants within the same craft fell under the ban of the injunction. One of the purposes of the Norris-LaGuardia Act, supra, passed by Congress in 1932, was to extend immunity from injunction to a labor union in one craft seeking the unioni-

zation of nonunion plants within the same craft: George B. Wallace Co. et al. v. International Association of Mechanics, etc., et al., supra.

Section 3 of our Labor Anti-Injunction Act (with minor changes not material here) is a copy of section 13 of the Norris-LaGuardia Act. It is therefore reasonable to assume that our legislature in adopting this language intended that the immunity from injunction contained in our act should embrace as wide a field as the Norris-La Guardia Act and should not have the limited effect of the Anti-trust Act.

Mention should be made of the fact that this definition of a "labor dispute" was first enacted into our law by the Act of June 23, 1931, P. L. 926, sec. 1, since repealed by the Labor Anti-Injunction Act of 1937. The decision in Kirmse et al. v. Adler et al., supra, was made without reference to the Act of 1931 because the case arose prior to the effective date of that act.

Under the Labor Anti-Injunction Act picketing in a labor dispute cannot be restrained though it is accompanied by illegal acts. Only the illegal acts may be enjoined. This changes the law as announced in Kirmse et al. v. Adler et al., supra. Section 6 of the Labor Anti-Injunction Act provides that no court in this State in any case growing out of a labor dispute shall issue an injunction to restrain any person from:

"(e) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts or merits involved in, any labor dispute, whether by advertising, speaking or picketing or patrolling any public street or place where any person or persons may lawfully be, or by any other method not involving misrepresentation, fraud, duress, violence, breach of the peace or threat thereof."

Section 7 of the act prohibits courts from restraining acts which are lawful under section 6 "upon the ground that illegal acts have been committed or threatened in the

course of any labor dispute". Picketing by defendant will therefore not be enjoined.

The use of the legend "Peak's Unfair" or "Peak's Cafe Unfair" on the banners carried by the pickets should be restrained. "Unfair" means "Marked by dishonesty or fraud; showing partiality or prejudice; not fair; dishonest; unjust; as, *unfair* dealing; an *unfair* trader": Funk & Wagnalls New Standard Dictionary. The facts do not justify the imputation of dishonesty, fraud, or unfair dealing to plaintiff. Nor do they justify the conclusion that plaintiff is prejudiced against organized labor. He stands singularly indifferent, willing to deal with defendant union if his employes should sanction it. They, probably because of a previous experience, have refused to recognize defendant as their bargaining agent. To term plaintiff "unfair" to organized labor under these circumstances is not a truthful statement of the facts. Some courts have declared that the term "unfair" as used in a labor dispute has come to have the well-understood limited meaning of being "unfriendly to organized labor": Steffes v. Motion Picture Machine Operators Union, etc., et al., 136 Minn. 200; J. F. Parkinson Co. v. Building Trades Council, etc., et al., 154 Calif. 581; Seattle Brewing & Malting Co. v. Hansen et al., 144 Fed. 1011. But the facts of this case do not warrant the accusation that plaintiff is unfriendly to organized labor.

The number of pickets must not be excessive, for numbers may intimidate as easily as actions: American Steel Foundries v. Tri-City Central Trades Council et al., 257 U. S. 184 (1921) ; Jefferson & Indiana Coal Co. v. Marks et al., 287 Pa. 171 (1926). Two pickets should be sufficient to acquaint the public with the nature of defendant union's grievance. Prospective patrons and other persons seeking access to plaintiff's café should not be accosted nor their ingress and egress impeded. The pickets should at all times remain a sufficient distance away from the entrance to plaintiff's café to accomplish this purpose and

thus prevent fear, intimidation, and annoyance of possible patrons. The gathering of members of defendant union in great numbers near plaintiff's café engenders fear and intimidation and may lead to violence and will be restrained.

From the above the court makes the following

*Conclusions of law.*

1. This case involves a "labor dispute" as defined by the Labor Anti-Injunction Act of 1937, and said act applies to this case.

2. Picketing cannot be restrained but the use of more than two pickets will be restrained.

3. The use of the legend "Peak's Unfair" or "Peak's Café Unfair" is not a truthful statement of the controversy in this case and will be restrained, unless the banners also fairly state in immediate connection therewith the essential facts of the labor dispute.

4. Accosting of prospective patrons and others desiring access to plaintiff's café is unlawful and will be restrained.

5. The gathering of members of defendant union in large numbers in the neighborhood of plaintiff's café tends to engender fear and intimidation and may lead to violence. Such gatherings are unlawful and will be restrained.

6. No item of relief granted herein is relief which is prohibited under section 6 of the Labor Anti-Injunction Act. As to each item of relief granted, greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendant by granting relief.

7. Plaintiff has no adequate remedy at law.

8. The public officers charged with the duty to protect plaintiff's property are unable to furnish adequate protection against the acts of defendant herein restrained.

9. The bill should be dismissed as to defendant, Bartenders' League Local No. 115.

No decree will issue now. Counsel are requested to agree upon a legend to be used on the banners carried by the pickets in accordance with this adjudication and the distance to be kept by the pickets from the entrance to plaintiff's café, and also to submit a decree nisi in accordance herewith and drawn to conform to the provisions of the Labor Anti-Injunction Act for approval by this court before March 9, 1938, at 10 a.m.