Commonwealth *v.* Smith, Appellant.

Argued September 28, 1954.   Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*John Patrick Walsh,* with him *Leon Rosenfield,* for appellant.

*Samuel Dash,* Assistant District Attorney and *Michael von Moschzisker,* First Assistant District Attorney, with them *Victor Wright,* Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY RHODES, P. J., January 14, 1955:

This is an appeal by defendant from conviction and sentence entered in the Court of Quarter Sessions of Philadelphia County on a charge of fornication and bastardy.[1]   Defendant's motions for a new trial and in arrest of judgment were dismissed, and thereupon sentence was imposed.   Appellant's contentions relate to the dismissal of his motions.

Appellant questions the sufficiency of the evidence to warrant its submission to the jury.   In our opinion a summary of the evidence clearly indicates that the guilt or innocence of appellant was for the jury to de-

---

[1] The case was certified to the Municipal Court of Philadelphia County for trial.

termine. Although the evidence was conflicting, the Commonwealth established all of the elements of the crime charged. Hence, we may not substitute our judgment for that of the jurors. *Com. v. Barrish,* 297 Pa. 160, 165, 146 A. 553.

Prosecutrix testified that appellant had intercourse twice with her in a tourist cabin on May 26, 1951, or the early morning of May 27, 1951, as the result of which she became pregnant; and that a male child was born to her on February 16, 1952, at the Presbyterian Hospital in Philadelphia. She had known appellant for some time as a casual acquaintance. According to the Commonwealth's testimony, appellant met prosecutrix and her sister-in-law at the Media Athletic Club on May 26, 1951, at about 11:45 p.m. After dancing with the prosecutrix, appellant and the two women left the Media Athletic Club about 1:30 a.m. in appellant's car and visited another eating place. Appellant left the sister-in-law at her home, and then went with prosecutrix to a tourist cabin, where they remained until 6:30 a.m. Appellant then drove prosecutrix home. She was corroborated by her sister-in-law as to the events at the Media Athletic Club the evening of May 26, 1951. Though previously married to Richard L. Clark, prosecutrix testified she was "divorced" from him. The Commonwealth offered in evidence an exemplified copy of a decree of annulment of the Supreme Court of New York; it was entered September 23, 1946, and became final three months later. This was properly admitted in evidence. See Act of June 25, 1948, chap. 646, 62 Stat. 947, 28 U.S.C.A. 1738; *Com. v. Joyce,* 319 Pa. 507, 181 A. 481; *Com. v. Cover,* 281 Pa. 429, 126 A. 786. The use of the word "divorce" rather than "annulment" is immaterial. The marriage was dissolved by the decree, and there was no evidence to establish that the decree was

not applicable to the prosecutrix and her former husband.

Appellant testified in his own behalf. He not only denied the charge but presented evidence of an alibi. He testified that on the evening of May 26, 1951, he was present at a six o'clock dinner party in the apartment of a Mr. and Mrs. Brennan at the School Lane House Apartments. Also present were appellant's sister and her husband, Mr. and Mrs. Barclay. Following dinner at the Brennan apartment, the two couples and appellant left School Lane House Apartments and drove to the Media Athletic Club about 11:15 p.m., where they remained until 3:00 a.m. Appellant denied seeing the prosecutrix at the Media Athletic Club, or elsewhere, on the evening in question. After stopping at another eating place appellant said he drove Mr. and Mrs. Brennan back to School Lane House Apartments in his car, arriving there about 5:00 a.m. on May 27, 1951. At the suggestion of the Brennans he stayed in their apartment, arising in time to attend church at 12:15 p.m. Appellant stated he drove the Brennans in his car on the trip to and from the Media Athletic Club, because the Brennan car was being repaired at the time. Appellant's brother-in-law, Mr. Barclay, corroborated appellant as to the dinner party at the Brennans and the trip to the Media Athletic Club. Mrs. Brennan also corroborated appellant as to the dinner party at her apartment and subsequent events on the evening of May 26, 1951. On direct examination Mrs. Brennan testified that appellant drove her and her husband in appellant's car, and on cross-examination she said that they did not take their car because it was in the repair shop of the garage at School Lane House Apartments. Mrs. Brennan was sure their car was being repaired although she did not know what was wrong with it.

In order to impeach Mrs. Brennan's testimony that the Brennan car was undergoing repairs on the night in question, the Commonwealth, over the objection of appellant's counsel, called the operator of the garage at School Lane House Apartments. This witness had no record or recollection of repairs made to the Brennan car in May or June of 1951. After some discussion as to whether cross-examination of this witness constituted a waiver of the objection to the witness's testimony, appellant's counsel proceeded to cross-examine this impeaching witness at length in an effort to show the garage records were not conclusive. The witness insisted, however, that if repairs were made to the Brennan car, he would have a record of the same in the name of the owner of the car.

The defense introduced evidence that at the time of the birth of the child in the Presbyterian Hospital, according to the hospital records and the birth certificate, prosecutrix named her former husband, Richard Lloyd Clark, as the father of the child, stating that Clark was then her husband. By way of rebuttal the Commonwealth called prosecutrix who explained why she told hospital authorities the child was legitimate.

The evidence was clearly sufficient to sustain the verdict of guilty. The Commonwealth showed prosecutrix was unmarried at the time of conception and when the child was born. If the testimony of prosecutrix is believed, she and appellant had intercourse on May 27, 1951, as a result of which a child was begotten and born. Appellant's denial and the defense of an alibi on the date alleged involved the credibility of witnesses, which was for determination by the jury. The issues in the case were not complicated and were submitted to the jury in a charge which is not here questioned. There was no question of the period of gestation, as in *Com. v. Young*, 163 Pa. Superior Ct. 279,

60 A. 2d 831, nor was there any evidence that prosecutrix had relations with other men at or about the time of conception, as in *Com. v. Jodlowsky*, 163 Pa. Superior Ct. 284, 60 A. 2d 836. In arguing the sufficiency of the evidence counsel points to various inconsistencies which go only to the credibility of the prosecutrix, and this was for the jury to pass upon.

Appellant claims there was prejudicial error in allowing the Commonwealth to call the garageman, in an effort to impeach the testimony of appellant's witness Mrs. Brennan on the question whether the Brennan car was undergoing repairs on the night of the alleged intercourse. Appellant asserts that such testimony amounted to impeachment of a witness on a collateral matter, and as such was inadmissible and prejudicial. The rule is set forth in *Com. v. Petrillo*, 341 Pa. 209, 223, 225, 19 A. 2d 288, 295, 296: "A witness can be contradicted only on matters germane to the issue trying. There is no rule more firmly established than this: 'No contradiction shall be permitted on collateral matters.' . . . The facts relevant to the discrediting of a witness must have grown out of the witness's relationship to the case on trial or to those individuals involved in it or they must refer to the witness's testimonial infirmity or inability *in respect to that case.* . . . Particular facts cannot, as a rule, be given in evidence to impeach a witness's general credit, but facts which *immediately* affect the quality of the witness's testimony in the case trying *are* admissible." Admittedly the test of collateralness is not easy to apply in a given case. Here appellant's defense consisted of a denial and an alibi covering the time the alleged intercourse took place. Appellant testified he attended the Brennan dinner party and drove the Brennans to the Media Athletic Club in his car because the Brennan car was being repaired. Such a factual

question had a direct bearing on appellant's alibi and cannot be said to be wholly collateral within the rule set forth in the *Petrillo* case. In any event, appellant's counsel cross-examined the impeaching witness at length, and while this may not preclude appellant from objecting to the testimony, it did prolong and emphasize the issue. Appellant's alibi testimony was detailed and specific. Mrs. Brennan was an important corroborating witness. Under such circumstances the admission of the impeaching testimony was not reversible error, nor did it deprive appellant of his right to a fair trial.

The Commonwealth had shown that prosecutrix was unmarried at the time of conception and birth of the child. Appellant's counsel had offered in evidence the hospital records and birth certificate wherein prosecutrix stated that the child was the legitimate child of her former marriage. Under the Act of June 29, 1953, P. L. 304, 35 PS §450.810, a certified copy of the birth certificate was prima facie evidence of its contents. The Commonwealth was properly permitted to call prosecutrix to explain her inconsistent statements. Such action was not prejudicial to appellant and afforded the Commonwealth a proper opportunity to develop its case on the issue of the credibility of the prosecutrix.

As we previously stated, the Commonwealth showed prosecutrix to be unmarried at all times pertinent to the issue in this case. The statements in the birth certificate showing legitimacy were not conclusive. There is no uncontradicted or positive evidence that prosecutrix was married at the time of the child's birth or conception. She was not incompetent as a witness within the rule (*Com. v. DiMatteo*, 124 Pa. Superior Ct. 277, 188 A. 425; *Com. v. Becker*, 168 Pa. Superior

410

Ct. 69, 76 A. 2d 657) forbidding a parent to bastardize issue born during lawful wedlock.

The conviction and sentence are affirmed.