## Elisco, Appellant, *v.* Rockwell Manufacturing Company.

Argued October 5, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry Alan Sherman,* for appellants.

*J. Wray Connolly,* with him *Moorhead & Knox,* for appellee.

OPINION BY MR. JUSTICE JONES, December 29, 1956:

The sole question involved in this case is whether a Pennsylvania court has jurisdiction to issue a preliminary injunction against an employer at the instance of employees for the purpose of maintaining the

status quo with respect to the physical location of one of the manufacturing plants of the employer pending disposition by the National Labor Relations Board of a charge of unfair labor practices lodged with the Board by the employees on the ground that the employer intended to remove one of its plants from its present location in Pennsylvania in alleged violation of an existing labor relations contract. The question arose under the following circumstances.

The plaintiffs, all of whom are employees of the defendant company, are members of Local 883 of the United Auto Workers A. F. of L. The company has its principal office in Pittsburgh where it maintains a manufacturing plant as it also does in several other cities in Pennsylvania as well as in a number of other States. A labor relations contract was entered into by the company and the union acting as the bargaining agent of the company's employees. While the contract endured, the plaintiff employees caused to be lodged with the National Labor Relations Board charges that the employer was guilty of unfair labor practices in that it was about to remove one of its plants from the Pittsburgh area under circumstances which allegedly constituted a violation of the existing labor relations contract and its supplement. Regional counsel for the Board declined to seek an injunction in the federal court on the basis of the unfair labor charges lodged with the Board.[1] In any event, two days after the

---

[1] While it is of no present materiality, the failure of regional counsel to act in such regard appears to have been entirely proper. The facts alleged by the complainants in the instant suit do not disclose that the Board ever issued an unfair labor practices complaint which is a prerequisite to the Board's seeking federal injunctive relief: see Act of July 5, 1935, c. 372, §10, 49 Stat. 453, as amended by the Act of June 23, 1947, c. 120, 61 Stat. 146, 29 U.S.C.A. §160 (j).

lodging of the charge with the National Labor Relations Board, the plaintiffs filed their complaint in the instant suit for injunctive relief in the court below alleging substantially the same grounds as were set forth in the charge of unfair labor practices.

The defendant filed preliminary objections to the complaint in equity and the matter came on for argument before the court en banc. The learned court below, in an able and comprehensive opinion, held that, on the basis of the allegations in the complaint, the federal Labor Management Relations Act has preempted the particular field and that the state court is without jurisdiction in the premises. The court accordingly denied the plaintiffs the injunctive relief sought, and, from the final decree entered, the plaintiffs have appealed.

In *Garner v. Teamsters, Chauffeurs and Helpers Local Union,* 346 U. S. 485, the Supreme Court of the United States affirmed our decision (373 Pa. 19, 94 A. 2d 893) to the effect that a state court is without jurisdiction to grant relief in respect of an alleged unfair labor practice where an appropriate remedy is afforded through the National Labor Relations Board.[2] In the *Garner* case we reversed the decree of the trial court which, upon a conclusion that the picketing violated Section 6 (c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, had issued a preliminary injunction restraining the peaceful picketing of an interstate business by union members for organi-

---

2 Compare *Upholsterers' International Union of North America v. United Furniture Workers of America O. I. O.,* 356 Pa. 469, 52 A. 2d 217, which was decided before the National Labor Relations Board was empowered by the national Labor Management Relations Act of 1947 to seek appropriate injunctive relief in a federal District Court in respect of an alleged unfair labor practice then before the Board for remedial action.

zational purposes. In speaking for this court, Mr. Chief Justice STERN, after noting the applicable provisions of the federal Labor Management Relations Act, concluded it "provided a complete remedy whenever there was a charge presented to [the Board] of an unfair labor practice,—immediate injunctive relief on petition of the Board, a final hearing by the Board, a review of such order in the Federal court. In our opinion such provisions for a comprehensive remedy precluded any State action by way of a different or additional remedy for the correction of the identical grievance."

In the opinion for the Supreme Court in the *Garner* case Mr. Justice JACKSON, who spoke for a unanimous court, took note of the argument in the dissent in this court that the federal remedy was, as a practical matter, inadequate in that the administrative process was too slow to prevent irreparable injury—incidentally, the identical argument now advanced by the present appellants. As to that, the learned jurist said,—"The same reasoning which prohibits federal courts from intervening in such cases [matters within the jurisdiction of the National Labor Relations Board], except by way of review or on application of the federal Board, precludes state courts from doing so." In disposing of the further argument that there was no conflict between state and federal actions as the State enforced "private rights", Mr. Justice JACKSON went on to say that "even if we were to assume, with petitioners, that distinctly private rights were enforced by the State authorities, it does not follow that the state and federal authorities may supplement each other in cases of this type. The conflict lies in remedies, not rights. The same picketing may injure both public and private rights. But when two separate remedies are brought to bear on the same activity, a conflict is imminent. It

must be remembered that petitioners' state remedy was a suit for an injunction prohibiting the picketing. The federal Board, if it should find a violation of the national Labor Management Relations Act, would issue a cease-and-desist order and perhaps obtain a temporary injunction to preserve the *status quo*. Or if it found no violation, it would dismiss the complaint, thereby sanctioning the picketing. To avoid facing a conflict between the state and federal remedies, we would have to assume either that both authorities will always agree as to whether the picketing should continue, or that the State's temporary injunction will be dissolved as soon as the federal Board acts. But experience gives no assurance of either alternative, and there is no indication that the statute left it open for such conflicts to arise."

It is clear that the foregoing pronouncement of highest judicial authority furnishes a complete answer to the appellants' insistence upon concurrent federal and state jurisdiction in the premises on the ground that the federal Act does not afford to the individual the right to seek injunctive relief. The appellants contend, however, that decisions of the Supreme Court subsequent to the *Garner* case indicate that state courts may exercise concurrent jurisdiction with the National Labor Relations Board. In support of that contention, they cite *Weber v. Anheuser-Busch, Inc.*, 348 U. S. 468; *United Automobile, Aircraft and Agricultural Implement Workers of America v. Wisconsin Employment Relations Board*, 351 U. S. 266; and *Amalgamated Clothing Workers of America v. Richman Brothers Co.*, 348 U. S. 511.

In the *Weber* case the Supreme Court held that a state court (Missouri) was without jurisdiction to enjoin an alleged unfair labor practice even though it

constituted a violation of local law dealing with restraints of trade. Just as in the instant case, the party alleging the unfair labor practice in the *Weber* case had filed charges with the National Labor Relations Board and then, without awaiting the Board's decision in the matter, sought to enjoin in the state court the same alleged unfair practice. Mr. Justice FRANKFURTER, speaking for the court, said,—". . . where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance." So far as it is presently pertinent, the *Weber* case represents an unqualified affirmance of the doctrine of the *Garner* case.

The *United Automobile* case, supra, was decided by a divided court. Mr. Justice REED, who spoke for the majority, held that, under Wisconsin's labor relations statute, a state court could enjoin mass picketing attended, as it was, by threatened physical violence (which, if perpetrated, the State could, of course, punish under its criminal law) and that it was immaterial that the restraint was enforced through an administrative tribunal concerned solely with labor relations problems. It was of no consequence, in the majority's view, that in the particular instance there might be a duplication of remedies; such an eventuality was not specifically prohibited by the federal Labor Management Relations Act, and the States, as "the natural guardians of the public against violence" have a "dominant interest . . . in preventing violence and property

damage . . . ." See our own recent decision in *Westinghouse Electric Corporation v. United Electrical, Radio and Machine Workers of America*, 383 Pa. 297, 118 A. 2d 180. Mr. Justice DOUGLAS, in his dissent in the *United Automobile* case, wherein Mr. Chief Justice WARREN and Mr. Justice BLACK joined, deemed the decision in that case a "retreat from *Garner*." However, the Supreme Court's most recent decision on the subject was a summary reversal, *per curiam*, on the authority of the *Weber* case, of the action of the Supreme Court of Idaho in assuming jurisdiction to enjoin picketing which constituted a "secondary boycott" under the labor statute of that State: see *Pocatello Building and Construction Trades Council v. C. H. Elle Construction Co.*, 352 U. S. 884. In no way does the *United Automobile* case afford the appellants' argument any support. Notably, neither actual nor threatened violence is averred or implicit in the complaint; and the subject matter in controversy is the same before the National Labor Relations Board as in the state court.

As to the *Richman* case, supra, the learned court below pointedly observed that "Even a cursory examination of this decision would indicate that the case was not applicable." In the *Richman* case, a union sought to invoke the jurisdiction of a federal District Court in an effort to enjoin a state court from proceeding with an action brought by an employer for injunctive relief against the union for an unfair labor practice. It was assumed without discussion that the matter was within the federal sphere and, hence, "outside state authority". The only question for decision, therefore, was as to the power of the federal court to enjoin the procedure in the state court. Because of the limitations imposed by Act of Congress (28 U.S.C.A. §2283)

on the power of District Courts to grant injunctive relief, it was held that the court was without jurisdiction. The case in nowise stands for the proposition, which the appellants urge, that the action of the state court in entertaining the complaint was proper.

It is plain from the allegations of the complaint that the court below properly declined to take jurisdiction of the controversy.

Decree affirmed at the appellants' costs.