# Fountain Hill Underwear Mills, Appellant, *v.* Amalgamated Clothing Workers' Union of America.

Argued May 26, 1958.   Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*E. G. Scoblionko,* with him *Maxwell E. Davison, George Kerestes, Frank A. Doocey,* and *Loose, Kerestes & Bayer,* and *Scoblionko & Frank,* for appellants.

*Orrin E. Boyle,* with him *Harold Caplan* and *George A. Shutack,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 30, 1958:

This appeal questions the dismissal by the Court of Common Pleas of Carbon County of plaintiffs' complaint in equity seeking an injunction to restrain the Amalgamated Clothing Workers' Union of America (herein called Union), and George Nejmeh, its staff representative (herein called Nejmeh), from the unlawful picketing of plaintiffs' plant located in Palmerton, Pennsylvania.

Plaintiff, Fountain Hill Underwear (herein called Fountain Hill), is a partnership engaged in the manufacture and sale of clothing with its principal place of business in Bethlehem, Pennsylvania. The employees of the Bethlehem plant are represented by the International Ladies' Garment Workers Union (herein called ILGWU). On September 1, 1956, Fountain Hill and the ILGWU executed a collective bargaining agreement, *presently in effect,* which provides that the terms and conditions of the agreement would apply to any plants that Fountain Hill might open in the future. Fountain Hill subsequently organized the Palmerton Mills, Inc. (also a plaintiff herein)—a wholly owned subsidiary—to extend its operations to a factory building located in Palmerton, Pennsylvania. This building had been leased previously by the Palmer Shirt Co., *a corporation without any relationship to plaintiffs,* whose employees were represented for collective bargaining purposes by the Union.

Plaintiffs allege that, shortly after the acquisition of the Palmerton factory, the Union demanded a written contract providing for its recognition as the sole and exclusive bargaining agent for all persons to be employed by the plaintiffs at the Palmerton plant because it had represented the employees of the previous occupant of the factory. Plaintiffs were further advised by the Union that, unless there was compliance with its demands, the Palmerton factory would never open.

On December 17, 1957, after plaintiffs had hired approximately fifty persons, the Union picketed the plant entrance. The complaint avers that approximately two hundred pickets completely obstructed the sole entrance to the plant preventing those employed from entering the building and that numerous acts of violence were committed. Two days after these incidents—on December 19, 1957—plaintiffs filed this complaint in equity requesting the court to enjoin the Union and Nejmeh preliminarily, until hearing, and permanently thereafter, from (1) mass picketing; (2) acts of violence; (3) preventing entrance to the plant by employees; (4) doing any act calculated to bring about a breach of the contract between plaintiffs and the ILGWU.

The court issued a rule to show cause why a preliminary injunction should not be granted; after a hearing on January 3, 1958, this rule was discharged. The preliminary hearing was limited—in the language of the court—to the question of determining "whether or not there is such violation and interference down there in the operation of the plant, and whether or not it should be restrained."[1] On January 21, 1958, a final

---

[1] The record, however, indicates that the court was concerned only with the question of determining the degree of violence: ". . . If the Court should make such an Order here and *restrain mass*

hearing was held at which time plaintiffs attempted to show a continuity of mass picketing and violence subsequent to the filing of the complaint. The court refused to permit the introduction of such evidence without an amendment to the complaint setting forth the specific dates of the subsequent acts; upon a plea of surprise, the court granted the Union thirty days to file an answer to these additional charges. At a hearing re-scheduled for February 29, 1958, the court then refused to permit the hearing to continue until plaintiffs filed a written notice of discontinuance of an appeal taken to this Court on January 22, 1958.[2] On April 1, 1958, the Union filed a motion to dismiss the complaint; on April 8, 1958, the court below dismissed the complaint.

The court bases dismissal of plaintiffs' complaint upon the grounds that: (1) plaintiffs failed to allege and prove certain prerequisites to the granting of an injunction under the Labor Anti-Injunction Act, supra;[3]

---

*picketing, it would be a matter of going beyond the law . . .*" and "He may open his doors, but whether there are going to be employees coming in, that is another matter. You have this dispute existing down there. It is not for me to say to the employees to go in or not. *If the plant is opened and there is violence and it gets beyond the control of the police officials in the community and the county, then the Court steps in and uses its injunctive powers.*" (Emphasis supplied).

[2] In this respect the court clearly erred. The Act of June 12, 1879, P.L. 177, §1 (12 PS §1102) provides: "In all cases in equity, in which a special or preliminary injunction has been refused by any court of common pleas, an appeal . . . shall be allowed, but the pendency of such appeal shall not suspend proceedings in the original suit; . . ." In addition thereto, the Anti-Injunction Act does not provide that an appeal shall act as a supersedeas: Act of June 2, 1937, P.L. 1198, §15, 43 PS §206o.

[3] The Act of June 2, 1937, P.L. 1198, §9, 43 PS §206i: "No court of this Commonwealth shall issue any restraining order or a temporary or permanent injunction in any case involving or

(2) plaintiffs failed to produce sufficient competent evidence to justify the relief sought; (3) by instituting a trespass action against defendants in the Court of Common Pleas upon the same cause of action alleged in the equity complaint, plaintiffs ousted equity's jurisdiction and admitted the existence of an adequate remedy at law; (4) the filing of a petition with the National Labor Relations Board by plaintiffs against the Union, charging it with unfair labor practices, also ousted equity's jurisdiction and admitted the existence of another adequate remedy at law.

The basic error of the court below stemmed from its mistaken belief that the Anti-Injunction Act applies to *every* labor dispute. Section 206(d) provides specifically that the Act shall not apply to certain labor disputes.[4] If a particular labor dispute falls within the

---

growing out of a labor dispute, except after hearing the testimony of witnesses in open court . . . in support of the allegations of a complaint made under oath, . . . to the effect— . . .

"(c) That, as to each item of relief granted, greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by granting of relief. (d) That no item of relief granted is relief which is prohibited under section six of this act. (e) That complainant has no adequate remedy at law; and (f) That the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection." The Act of June 2, 1937, P.L. 1198, §11, 43 PS 206k: "No . . . injunctive relief shall be granted to any complainant . . . who has failed to make every reasonable effort to settle such dispute, either by negotiation, or with the aid of any available governmental machinery of mediation or voluntary arbitration . . ."

[4] ". . . Provided, however, That this act shall not apply in any case—(a) Involving a labor dispute, as defined herein, which is in disregard, breach, or violation of, or which tends to procure the disregard, breach, or violation of, a valid subsisting labor agreement arrived at between an employer and the representatives designated or selected by the employes for the purpose of collective bargaining . . ."

exclusion of section 206(d), compliance with the procedural requirements of pleading and proof of that statute is not a prerequisite to the issuance of an injunction: *Westinghouse Electric Corporation v. United Electrical, Radio & Machine Workers of America (CIO) Local 601*, 353 Pa. 446, 46 A. 2d 16; *Carnegie-Illinois Steel Corporation v. United Steelworkers of America*, 353 Pa. 420, 45 A. 2d 857. The allegations of the complaint and the evidence introduced at the preliminary and abortive final hearings clearly reveal that the Act has no application to the instant controversy. In any event, plaintiffs were never granted a final hearing in order to fully develop this argument, nor did the court below even consider its validity in dismissing the complaint.

The second reason assigned, namely, the failure of plaintiffs to produce sufficient evidence to justify in-

"(b) Where a majority of the employes have not joined a labor organization, or where two or more labor organizations are competing for membership of the employes, and any labor organization or any of its officers, agents, representatives, employes, or members engages in a course of conduct intended or calculated to coerce an employer to compel or require his employes to prefer or become members of or otherwise join any labor organization.

"(c) Where any person, association, employe, labor organization, or any employe, agent, representative, or officer of a labor organization engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935.

"(d) Where in the course of a labor dispute as herein defined, an employe, or employes acting in concert, or a labor organization, or the members, officers, agents, or representatives of a labor organization or anyone acting for such organization, seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining." Act of June 2, 1937, P.L. 1198, §4, Act of June 9, 1939, P. L. 302, §1, 43 PS §206d.

junctive relief, is equally erroneous. By the court's own action the plaintiffs were denied the opportunity to present such evidence. Furthermore, the court unduly restricted the hearing to a determination of the question of whether or not there was sufficient violence to justify the issuance of the injunction,[5] unmindful that mass picketing, threats, and intimidation of employees are equally as abhorrent to the term peaceful picketing as is physical violence. *Westinghouse Electric Corporation v. United Electrical Radio and Machine Workers of America,* 383 Pa. 297, 118 A. 2d 180; *Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O.,* 369 Pa. 359, 85 A. 2d 851.[6] Furthermore, not only must picketing be conducted in a peaceful manner, but the object which it seeks to attain must be legitimate and lawful: *Sansom House Enterprises, Inc. v. Waiters & Waitresses Union, Local 301, AFL,* 382 Pa. 476, 115 A. 2d 746; *Anchorage, Inc. v. Waiters & Waitresses Union,* 383 Pa. 547, 119 A. 2d 199.[7] Plaintiffs alleged in their

---

[5] See note 1, supra.

[6] "The defendants' first contention is clearly without merit—mass picketing is illegal; coercion, intimidation and threats are illegal; and where these exist it can not be successfully contended that the picketing was peaceful: [Citing cases]." *Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O.,* supra, at 363.

[7] "The principles governing the issuing of injunctions against picketing in labor disputes, so far as here pertinent, are well established: . . . (2) Where the object of the picketing is unlawful it is properly enjoinable: [citing cases] . . . (3) The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to compel or require his employes to join the union: [citing cases] . . . (4) The object of picketing is unlawful and therefore enjoinable if its purpose is to coerce the employer to bargain with a non-representative union and sign a contract with it which would interfere with his employes' right to choose their own bargaining representative: [citing cases] . . . (5) Picketing may be enjoined if *one* of its objects is unlawful even though not the *sole* object: [citing cases] . . ." *Anchorage, Inc. v. Waiters & Waitresses Union,* supra, at 549-551.

complaint that the mass picketing prevented ingress to and egress from the plant, amounted to a seizure of the employer's property and was an attempt to coerce the employer into recognizing the Union in violation of its valid collective bargaining agreement with ILGWU; any of these allegations, if proven, would warrant the issuance of an injunction. Not only did the court below improperly prohibit the introduction of evidence in support of these allegations, but it did not consider them worthy of any discussion in its opinion dismissing the complaint.

Moreover, the filing of a complaint in trespass for damages does not oust equity of its jurisdiction, or prove that plaintiffs have a complete and adequate remedy at law. In *Wortex Mills, Inc. v. Textile Workers Union of America*, 380 Pa. 3, 109 A. 2d 815, we specifically recognized that equity relief which both prevents continued injury and allows damages for the harm already caused by the same unlawful act is not incompatible in a labor, or any other, controversy.[8] The fact that such relief is sought in two separate actions is immaterial. Our decisions hold only that once equity has assumed jurisdiction a court *may* award incidental damages; it is not mandatory for equity to do so, nor does a failure to do so bar a plaintiff from securing such relief.

The court below finally asserts that the filing of a petition with the National Labor Relations Board by the plaintiffs ousted equity of its jurisdiction and demonstrates that plaintiffs had an adequate remedy

---

[8] "Ordinarily a Court of Equity has no jurisdiction to award damages for tortious or illegal acts, but this is subject to the well recognized principle that once equitable jurisdiction has attached, Equity has jurisdiction to do *complete* justice between the parties and, inter alia, award damages for tort (or for breach of contract), as well as grant other equitable relief: [citing cases]." *Wortex Mills, Inc. v. Textile Workers Union of America*, supra, at 11.

at law. It is true that once a controversy comes within the jurisdiction of the National Labor Relations Board and an adequate remedy becomes available through such forum, state courts or agencies are, in general, unable to act; however, evidence of the National Labor Relations Board's jurisdiction must be either readily ascertainable from the complaint itself[9] or affirmatively proven by the defendant.[10] Otherwise, the mere filing of a petition with the National Labor Relations Board by either party would be sufficient to unnecessarily delay state action until the question of jurisdiction was finally determined by the federal agency. The defendants are certainly not prejudiced by the requirement that they prove federal jurisdiction; any uncertainty which necessarily surrounds the filing of a petition must be conclusively removed so that the state courts may act or decline to act in accordance with the proven facts.

However, even if we assume that the National Labor Relations Board does have jurisdiction over the controversy in question, this does not *per se* deny state action in all cases. In *Wilkes Sportswear, Inc. v. International Ladies' Garment Workers' Union*, 380 Pa. 164, 167-168, 110 A. 2d 418, we stated: "Both parties to this controversy agree that plaintiff's business involved interstate operations . . . But in view of the

---

[9] See: *Elisco v. Rockwell Manufacturing Company*, 387 Pa. 274, 128 A. 2d 32.

[10] "The question of federal jurisdiction in labor disputes arises only when the employer is engaged in interstate commerce or when his business substantially affects interstate commerce: [citing cases]. The record in this case, as compiled in the court below, does not clearly disclose the extent or even the existence of interstate commerce engaged in or affected by the operation of Vulcan Iron Works. In order to oust this Court of jurisdiction . . . appellants had the burden of establishing facts which would show the interstate character of the business involved." *Haefele v. Davis*, 373 Pa. 34, 41-42, 95 A. 2d 195.

court's findings in regard to the lawlessness, violence and intimidation of plaintiff's employes and customers which featured the picketing the court certainly had jurisdiction of the bill of complaint and was justified in issuing an injunction against the picketing so conducted: Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O., 369 Pa. 359, 364, 85 A. 2d 851, 854. It was pointed out in the Garner case (p. 488) that a State may still exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.'" In *Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 295, it was categorically declared that "The Fourteenth Amendment still leaves the state ample discretion in dealing with manifestations of force in the settlement of industrial conflicts." In *Allen-Bradley Local No. 111, United Electrical, Radio & Machine Workers of America, v. Wisconsin Employment Relations Board*, 315 U.S. 740, 749, it was held that the National Labor Relations Act did not prevent the State from enjoining mass picketing, threats or personal injury to employes desiring to work, or the obstruction of ingress to and egress from the employer's factory. By the dismissal of the complaint without a final and complete hearing, plaintiffs were deprived of any opportunity to prove that the Union was guilty of such acts.

For the above reasons, the order is reversed and the record remanded to permit plaintiffs to submit evidence in support of their allegations and to prove that the Union is still engaged in the alleged unlawful conduct.[11] In view of the unnecessary delay to which

---

[11] Although, in our view, the present record adequately supported the issuance of a preliminary injunction to restrain mass picketing and violence at the time of the first hearing, due to the lapse of time, we believe that now it is in the best interests of all

plaintiffs have already been subjected, we direct that a hearing is to be held within ten days of the remanding of the record and that, after hearing, the court below promptly either dismiss or grant the injunction.

. Mr. Justice COHEN concurs in the result.

---

parties concerned to postpone the issuance or denial of any injunction until a complete and adequate final hearing on all the issues can be held in the court below.