**Veon v. United Mine Workers of America**

*Ralph T. DeStefano,* of *Thorpe, Reed & Armstrong; E. Earl Autenreith,* of *Panner, Autenreith & Holland;* and *Richard N. McKee,* for plaintiffs.

*Lloyd F. Engle, Jr.,* of *Kuhn, Engle & Blair,* for defendants.

LYON, J., November 2, 1971.—Plaintiff filed a complaint in equity seeking injunctive relief against defendants, United Mineworkers of America (hereafter referred to as "International"), United Mineworkers of America, District 5 (hereafter referred to as "District 5"), and Joe Pozel, an adult person. On the date the complaint was filed, the court made an order setting a time for a hearing on plaintiff's request for a preliminary injunction. The record shows both the complaint and order of court were duly served by deputized service on John Seddon, Secretary-Treasurer of District 5, but is wholly silent concerning service upon the other named defendants. At the time set for hearing, attorney Lloyd F. Engle entered a general appearance for District 5 and a special appearance for International asserting lack of jurisdiction in personam. He also asserted lack of jurisdiction over the subject matter, contending injunctive relief was barred by section 206-A of the Pennsylvania Anti-Injunction Act.

The complaint was accompanied by affidavits of Ralph A. Veon, John P. Wallace and Gene Melvin Whalen. Veon, Wallace and George Riley testified at

the hearing on behalf of plaintiff. Defendant offered no testimony and the court thereupon found to be true all facts contained in the testimony of plaintiff's witnesses. Defendants now assert the evidence was legally insufficient to sustain the grant of a preliminary injunction.

There are two kinds of injunctions in Pennsylvania courts of equity. The one is preliminary or interlocutory; the other is final or perpetual. The object of the first in general is simply preventative, to maintain things in the condition in which they are at the time until the rights and equities of the parties can be considered and determined after a full examination and hearing: Audenried v. Philadelphia and Reading R.R., 68 Pa. 370 (1870); Emerman et ux. v. Baldwin et al., 186 Pa. Superior Ct. 561, 142 A. 2d 440 (1958). The purpose of a preliminary injunction hearing is to receive prima facie evidence of facts to be ultimately established at the final hearing: Grove Press, Inc. v. City of Philadelphia, 418 F. 2d 82 (3 Cir., 1969).

Pennsylvania Rule of Civil Procedure 1531(a) provides:

"In determining whether a preliminary . . . injunction should be granted . . . the court may act on the basis of averments of the pleadings . . . and may consider affidavits of parties or third persons or any other proof which the court may require." Cf. Link Belt Co. v. Local Union No. 118, American Federation of Technical Engineers, 415 Pa. 122, 202 A. 2d 314 (1964); Minit-man Car Wash Corporation v. Building and Construction Trades Council, 411 Pa. 585, 192 A. 2d 378 (1963).

A preliminary injunction should not be granted unless the facts and circumstances, alleged or proved, and the exigencies of the situation appear to require instant and, at least, temporary injunctive relief: Slott

v. Plastic Fabricators, Inc., 402 Pa. 433, 167 A. 2d 306 (1961). A preliminary injunction will not be issued unless all the following elements are established: (1) The existence of a clear right to relief; (2) an urgent necessity to avoid injury which cannot be adequately redressed in damages; and (3) a showing that greater injury will occur if the injunction is refused than if it is granted: Berkowitz v. Wilbar, 416 Pa. 369, 206 A. 2d 280 (1965); Schwab v. Pottstown Boro., 407 Pa. 531, 180 A. 2d 921 (1962); Slott v. Plastic Fabricators, Inc., 402 Pa. 433, 167 A. 2d 306 (1961). Plaintiff concedes its evidence is insufficient to support the grant of a preliminary injunction against the individual defendant, Joe Pozel, but contends it satisfies the standards required for the grant of a preliminary injunction against the other defendants.

Plaintiff is engaged in three separate mining operations in Lawrence County, Pa., and one in Petersburg, Ohio, immediately adjacent to the Lawrence County and Pennsylvania State lines. It has approximately 65 to 70 employes working the four mining operations. The court takes judicial notice that defendants are presently engaged in a strike pending the outcome of collective bargaining negotiations. All parties are concerned primarily with the mining of coal.

On October 11, 1971, each of plaintiff's four mining sites were approached in succession by a motor vehicle caravan estimated to consist of 23 to 30 automobiles, each carrying several men. The general mode of operation of the men riding in the motor vehicle caravan was approximately the same at each of plaintiff's mining sites. The vehicles parked on the road adjacent to the mining operation and the men riding in the cars, estimated to be between 75 and 100, emerged in unison, trespassing upon plaintiff's property, dumping coal from loaded trucks, smashing windshields,

dumping fuel oil and doing other great and grievous damage to plaintiff's mining operations. The intruders acted in concert, did not attempt to picket the mining operations, but instead were obviously intent on closing each of plaintiff's four mining operations with force and violence. While in the process of closing down the mining operations, some of the intruders exclaimed: "If you would join us you would not have this trouble"; "You have given us this trouble before"; "We will get you tonight"; "If you go back to work you will be the first to get it"; "You scabs have caused us a lot of trouble"; "Don't come back to the job until we get what we want"; and "If you start the machine before we get what we want, we will blow you off the face of the earth."

These statements, when considered in the light of the circumstances of the general strike then being conducted by the International and District 5, are sufficient to link both the International and District 5 with the unlawful violent acts of the trespassers. Their acts in forcibly closing down plaintiff's coal-mining operations and thereby helping to make coal unavailable from any source substantially aided the strike being conducted by both the International and District 5. Their comments in calling plaintiff's employes, "scabs," indicated that they were union members who believed that plaintiff's employes were doing work a good union member should not do. Furthermore, the fact that neither defendant produced evidence either adopting or repudiating the unlawful acts of the trespassers upon plaintiff's property is evidence that their testimony would have been unfavorable in this respect. And we think under the circumstances that plaintiff's evidence placed the burden upon defendant to produce evidence to the contrary: Commonwealth v. Middleton, 134 Pa. Superior Ct. 573

(1938). Hence, it is a fair conclusion that the trespassers were acting for and in behalf of both International and District 5 when closing down plaintiff's coal-mining operation, and that both defendants have accepted the benefit of their actions and have ratified them by their silence and failure to repudiate them.

Plaintiff resumed coal-mining operations which it has a clear legal right to do. However, on one occasion the operations were carefully observed by men operating a vehicle with the printed letters, "U.M.W.A." on the side of their vehicle and, therefore, it may reasonably be inferred that they were observers for defendants. Also, on other occasions, strange vehicles were viewed observing plaintiff's mining operations. In light of these facts and the threats made by the trespassers when destroying plaintiff's property, it is apparent that there is an urgent necessity that an injunction issue to avoid threatened injury to plaintiff's employes and equipment which cannot be adequately redressed in damages. Also, since a preliminary injunction will only maintain the status quo and enjoin the doing of an unlawful act, it is apparent in the light of the threats of the trespassers that greater injuries will probably occur if the preliminary injunction is refused than if it is granted. Hence, plaintiff's proof wholly satisfies the required standards for the granting of a preliminary injunction as set forth in Berkowitz v. Wilmar, supra.

The Labor Anti-Injunction Act has no application to the facts of this case where plaintiff's property was destroyed by violence and there were serious threats of future personal injury to plaintiff's employes and his property if coal-mining operations were resumed. State courts have the power, the right and the duty to restrain violence and overt threats of violence, and to preserve and protect public order and safety and

even to prevent property damage, even if the activities complained of would constitute an unfair labor practice over which the National Labor Relations Board would have exclusive jurisdiction: City Line Open Hearth, Inc. v. Hotel, Motel and Club Employees' Union, 413 Pa. 420, 197 A. 2d 614 (1964). Furthermore, the Anti-Injunction Act does not apply to every labor dispute, and if the particular dispute falls within the statutory exclusion, then compliance with procedural requirements of pleading and proof of the statute is not a prerequisite to the issuance of an injunction: Fountain Hill Underwear Mills v. Amalgamated Clothing Workers Union of America, 393 Pa. 385, 143 A. 2d 354 (1958). In light of the foregoing citations of authority, it is apparent that plaintiff followed the proper procedure for obtaining a preliminary injunction, and the mere fact that plaintiff filed an unfair labor practice with the National Labor Relations Board does not oust the jurisdiction of this court to issue a preliminary injunction restraining defendants from engaging in violence and other unlawful activity.

Moreover, service of process in the ordinary form is not necessary in connection with an application for preliminary injunction. Where the court has jurisdiction over the subject matter as in the instant case, since the violence was committed within the territorial limits of Lawrence County, only notice to defendant is required: Sirott v. Sirott, 85 Montg. 228 (1965); Murtagh v. Murtagh, 10 Chester 591 (1962); Pa. R. C. P. 1531(a). That defendant, International, had notice of the application for a preliminary injunction is proved by the special appearance of its attorney to contest in personam jurisdiction. However, this objection was not waived when its attorney participated in the proceedings for a preliminary injunction and may be re-

asserted at the final hearing for a permanent injunction where it will be incumbent upon plaintiff to show it has obtained jurisdiction in personam over International: Yoffee v. Golin et al., 413 Pa. 154, 196 A. 2d 317 (1964).

## ORDER OF COURT

And now, this November 2, 1971, upon the complaint and upon consideration of the supporting affidavits, testimony, and arguments by counsel, and it appearing that plaintiff has a clear right to relief, an urgent necessity to a preliminary injunction in order to avoid injury which cannot be adequately redressed in damages, and has shown that greater injury will result if the injunction is refused than if it is granted, it is ordered, adjudged, and decreed as follows:

1. An injunction shall issue forthwith preliminarily until a final hearing, restraining defendants, United Mine Workers of America and United Mine Workers of America, District 5, and each of them and their officers, representatives, agents and members of defendant unions, and all other persons acting under, by, through or in concert with them, from

(a) in any manner, by picketing or otherwise, interfering with, hindering or obstructing the conduct and operation of plaintiff's business at any of its work sites located within this jurisdiction;

(b) in any manner interfering with, hindering or obstructing the ingress and egress of the agents, servants and employes of plaintiff, engaged in the performance of their work assignments for plaintiff, and in the operation of plaintiff's property;

(c) in any manner preventing or attempting to pre-

vent any person or persons who are employes of plaintiff or others, from freely entering or leaving plaintiff's said work sites, or from entering or continuing in the performance of their work as employes at any of the said work sites; and

(d) in any manner conspiring, combining, agreeing and arranging with each other or with any other person or organization to interfere with or injure plaintiff in the conduct of its lawful operations or to interfere with, hinder, or annoy any person or employe of plaintiff, who may desire to enter or leave the said work site of plaintiff in connection with the performance of his lawful work assignments or for any other lawful purpose, by force, violence or display of force or numbers, by threats, by acts of intimidation, by use of epithets which suggest danger or taunts, or by any other conduct which tends to deprive any such employe or other person of the free enjoyment of his legal rights of access to and from plaintiff's property.

2. The foregoing preliminary injunction shall not be interpreted as interfering in any way with the right of defendants to engage in lawful, peaceful picketing.

3. The court shall retain jurisdiction of this matter to determine that this decree of court is obeyed and shall grant other relief as the court may deem appropriate.

4. Any party to this action may move the court at any time to set a prompt final hearing date to determine whether this preliminary injunction shall be dissolved or made permanent.

5. The preliminary injunction shall become effective upon the filing by plaintiff of a bond in the sum of $3,000 as changed by court order of November 4, 1971; said bond to be approved by the court and conditioned as provided by Pa. R. C. P. 1531(b).